THE BURLINGTON LUMBER COMPANY, Appellant, v. THE EVANS LUMBER COMPANY, *et al.*

Contracts: FRAUD: *Reformation.* A party to an oral contract, who, after its partial execution, is induced, by fraud or mistake, to sign what purports to be a written memorandum thereof, but which in fact contains provisions not in the oral contract, need not ask for a reformation of the writing, but may disaffirm it, and stand upon the oral agreement.

*Appeal from Decatur District Court.*—HON. W. H. TEDFORD, Judge.

SATURDAY, DECEMBER 12, 1896.

ACTION at law to recover an amount alleged to be due for lumber sold and delivered to the defendants. There was a trial by jury, and a verdict and judgment against the defendants. The plaintiff appeals,—*Affirmed.*

*Power, Huston & Power* and *C. W. Hoffman* for appellant.

*Harvey & Parrish* for appellees.

Robinson, J. — The plaintiff is a corporation, engaged in business, at Burlington, Iowa. The defendants are the Evans Lumber Company, a co-partnership, which was engaged in business at Lamoni, Iowa, and John B. Evans and Melville Evans, the members of the co-partnership. During several years prior to the eleventh day of July, 1893, the plaintiff sold to the defendant company bills of lumber. On that date the defendants were somewhat embarrassed financially, and, it is alleged, entered into an agreement of settlement with the plaintiff. A writing was drawn at that time, and signed by the defendant company, which, the plaintiff claims, was as follows: "Lamoni, Iowa, July 11, '93. For value received, the Evans Lumber Company, of Lamoni, Iowa, does hereby assign and sell to the Burlington Lumber Company, of Burlington, Iowa, the entire stock of lumber, lath, shingles, and all other material known and considered as a part of the lumber yard of the Evans Lumber Company of Lamoni, Iowa, which is situated on lots 15, 16, 17, and 18, in block No. 9, in the town of Lamoni,· Decatur county, Iowa, *at the agreed price of $4,237,74.* That the consideration for this transfer and assignment is in part payment of a debt of the Evans Lumber Company to the Burlington Lumber Company, of Burlington, Iowa, which debt is for the sum of $11,565.34, with accrued interest; and it is agreed that the said Burlington Lumber Company is to have immediate possession, ownership, and control of the above-described property, upon the signing of this transfer. It is also agreed and understood that the Evans Lumber Company is to have credit upon the

above-mentioned indebtedness to the full [net] value of said property [as realized in the ordinary course of business, in the sale of said property by the Burlington Lumber Company, which sale shall be, as soon as may be, not exceeding one year from this date]. ·The said Evans Lumber Company also sell, assign, and transfer absolutely to the Burlington Lumber Company aforesaid, each and all of the notes, accounts, books of account, and all debts due the said Evans Lumber Company, contracted or growing out of the firm business of said Evans Lumber Company, including specifically all debts as shown by the books of said firm, all of which are, at this time, transferred to the said Burlington Lumber Company. It is specifically agreed, however, that on this item credit shall only be allowed on the principal debt *so far as said accounts and notes go at their face value, and we are liable for the deficiency, if any* [as per the net collections of the Burlington Lumber Company therefrom], and this shall not be construed as evidence that the [whole] *balance of* debt is not now due. All fixtures, office furniture, and property of any and every kind and description, used in and about said premises and business, is included in this transfer. Witness this July 11th, 1893. [Signed] Evans Lumber Company, by M. Evans and J. D. Evans." Eleven days after this instrument was signed the Evans Lumber Company wrote to the plaintiff, and offered to rescind the agreement, on the ground that it was procured by fraud; and made a demand for the return of the property; but the offer was not accepted, nor was the property received on the settlement returned. The plaintiff claims it is entitled to recover of the defendants a balance of four thousand nine hundred and sixty-five dollars and forty-nine cents on account of the sales made to them. The defendants claim that the plaintiff has received the full amount due it in property belonging to the defendants, of the value of

nearly thirteen thousand dollars, which the plaintiff took possession of and converted to its own use; that the plaintiff claimed to take possession of the property by virtue of the writing which we have set out, but that the writing was procured through fraud, and is not of any force; that the stock of lumber, accounts, notes, and other property, were turned over to the plaintiff, and possession thereof taken by it, before the writing was signed; that the plaintiff took possession of the property so delivered, and mingled with it other property of the plaintiff in such a manner that it cannot be identified, and has sold the lumber and collected the notes and accounts, and is liable to the defendants for their value. The plaintiff admits that it took possession of the property in question under the instrument in writing, and denies all the allegations of fraud in regard to it. The amount of the verdict and judgment for the plaintiff was six hundred and fifty-nine dollars and forty-two cents, besides costs.

I. The appellees testified, as witnesses, that on the day the writing in controversy was signed, they made a verbal agreement with the plaintiff, by which they agreed to turn over their stock of lumber, notes, accounts, and other property in Lamoni,—the notes and accounts at their par value, and the lumber and other property at their invoice value,—to be applied in payment of the claim the plaintiff held against the defendant, and that the lumber, notes, accounts, and other property were turned over according to the agreement; that, after that was done, the parties attempted to reduce the verbal agreement to writing; that the writing in controversy was accordingly prepared by the attorney for the plaintiff, but that he wrongfully inserted therein the words which are in brackets, which were not any part of the agreement; that the words which we have italicized were in the

agreement as made, but were wrongfully omitted
from the writing; that, after it was completed, and
before it was signed, the attorney read it to the defend-
ants, pretending to read the italicized words as though
they were inserted in the writing where they now
appear in the copy we have set out, and omitting to
read the words included in brackets; that the altera-
tions and the reading were fraudulent, for the purpose
of deceiving the defendants, and inducing them to sign
the writing; that they were unable to read it, and,
believing it was correctly read, and that it set out the
agreement they had made, they signed it; that, when
they discovered the fraud, they at once rescinded
the contract, and have ever since refused to be
bound by it. The appellant contends that the contract
of the parties was reduced to writing, and, therefore,
that, until reformed, the writing must control. Ordina-
rily, when parties enter into a written agreement, all
negotiations which led to it will be deemed merged in
the writing, and that will be held to express the real con-
tract of the parties, and to control, even though erro-
neous, until reformed by competent authority. But
that rule does not apply to a contract obtained by
fraud, and for that reason voidable, which has been
rescinded by the party defrauded, nor when, by reason
of the fraud, the contract is absolutely void. If a per-
son fix his signature to a writing which he has been
fraudulently induced to believe, without fault on his
part, is different from what it is, and from what he
intended to sign, he is not bound by the writing.
"Such a contract is not merely voidable; it is void."
Bishop Cont., section 646. It was said, in *Doe v. Clark*,
42 Iowa, 123, that "an instrument in writing may be
defeated in an action at law as well as in equity," and
the right of the plaintiff to recover at law money
received as rent, notwithstanding a fraudulent assign-
ment of the lease, was sustained. See, also, 2 Parsons

Cont., 782; 1 Benjamin, Sales, sections 636, 649. In *Carey v. Gunnison*, 65 Iowa, 703 (22 N. W. Rep. 934), the plaintiff sought to recover damages for a breach of contract. The defendant alleged that the agreement was entered into through the fraud of the plaintiff, and by mutual mistake. It was held that the defense pleaded could be made at law, and that a reformation of the agreement was not necessary. What was said in regard to a mistake, not in regard to the subject-matter of the contract but in the terms of the writing employed to express it, is not applicable in this case, for the reason that the contract in suit is attacked for fraud, and not on the ground of mutual mistake. The case of *Linton v. Fireworks Co.* (N. Y.) (28 N. E. Rep. 580), also relied upon by the appellant, did not involve fraud, but a mistake with reference to the language used to express the actual agreement.

In this case the defendants claim that an oral agreement for the transfer of the lumber, notes, accounts, and other property was made, and the possession of the property was transferred to the plaintiff by virtue of that agreement, after which the parties attempted to reduce the agreement which had thus been made and carried into effect to writing, and that, by the fraudulent procurement of an agent of the plaintiff, the defendants were induced to sign a writing which did not represent the real agreement. They did not obtain anything by virtue of it, excepting the right to have credits made on their debt to the plaintiff. The latter obtained all the property which was transferred by the agreement, and hold all which they have not disposed of for their own benefit. The defendants did what they could to rescind the agreement as soon as they discovered the fraud alleged, and the plaintiff cannot claim anything from their silence, or acquiescence. There was no necessity for a reformation of the writing, because the

defendants do not claim anything under it, and for
the further reason that, if their claim in regard to it
be true, it is absolutely void, and the verbal agree-
ment remains in force.  There is some confusion in
the pleadings on which the cause was tried.  They do
not specifically allege that the property in question
was turned over to the plaintiff by virtue of a verbal
agreement made before the written one was signed,
but the case was tried on the part of the defendants
according to that theory, notwithstanding the fact
that it was in conflict with the averments of their
answer that the plaintiff took possession of the prop-
erty under the agreement in writing.

II.  The court failed to charge the jury in regard
to the verbal agreement, although asked to do so by
the plaintiff, but instructed that, if the written con-
tract was found to be fraudulent, the jury should
ascertain the reasonable market value of all the prop-
erty of the defendants of which the plaintiff acquired
possession, to deduct therefrom certain items, and
from the balance thus found to ascertain the amount
due the plaintiff.  One of the theories of the defend-
ants was that the plaintiff mingled with the lumber
it obtained from the defendants, other lumber, making
it impossible to distinguish and separate the property
of the defendants, and that a conversion of the prop-
erty was thus accomplished.  There could not have
been a conversion if the property was turned over to
the plaintiff by virtue of the verbal agreement to
which the defendants testified, and in that case the
plaintiff would have been liable to account for the par
value of the notes and accounts and the invoice value
of the lumber.  Therefore, the charge of the court was
not strictly correct.  But it is not claimed that the
sums to be allowed for the property, if it was received
under the verbal agreement, were less than its reason-
able market value, and the plaintiff could not have

been prejudiced by the error in the charge. On the contrary, we are satisfied that its effect, if any, was beneficial to the plaintiff.

III. It is insisted that the evidence does not justify the finding that the writing in controversy was fraudulent. It seems to us quite probable that the writing contained some provisions which the parties had not mentioned in the preliminary agreement, and which were not discovered when the writing was read, but that would not have been controlling. We have examined the writing, and the testimony in regard to it, with much care, and, although we should not have reached the conclusions which the jury did in regard to the alleged fraud, we cannot say that the finding was so far unsupported by the evidence that the verdict should have been set aside. The plaintiff has referred to other questions, including alleged misconduct of counsel; but we do not find in any of them ground for disturbing the judgment of the district court. It is, therefore, AFFIRMED.