HERBERT W. EGGLESTON and Another v. ADVANCE THRESHER COMPANY.[1]

November 17, 1905.

Nos. 14,544—(45).

**Liability of Principal.**

An agent of defendant, with authority to sell its machinery for cash or secured promissory notes, sold a threshing machine outfit and accepted and received from the purchasers (plaintiffs), without express authority, certain personal property in part payment of the purchase price. The contract of sale was subsequently rescinded by mutual consent of the parties, but the property delivered to the agent in part payment was never returned, and plaintiffs brought this action against defendant, the principal, to recover the value thereof. It is *held* that the manner and course of dealing between the agent and defendant as disclosed by the evidence was, within the rule laid down in Columbia Mill Co. v. National Bank of Commerce, 52 Minn. 224, such as to charge defendant with liability for the

[1] Reported in 104 N. W. 891.

96 M.—16

act of the agent in taking property from plaintiffs in part payment for the machine.

**Contract—Fraud.**

As between the immediate parties to a written contract, where one is induced by the false statements of the other to sign the same, he is not bound thereby, and may defend against the contract on the ground of fraud, even though negligent in signing without reading it.

**Evidence.**

Evidence considered, and *held* sufficient to sustain the verdict.

Action in the district court for Nobles county to recover $800 and interest, for the conversion of certain personal property. The case was tried before P. E. Brown, J., and a jury, which rendered a verdict in favor of plaintiffs for the sum demanded. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*L. L. Longbrake,* for appellant.

*Steele M. Smith* and *Benton & Molyneaux,* for respondents.

BROWN, J.

The facts in this case are as follows: During the years 1901, 1902, and 1903, one Shanahan was defendant's agent at Worthington, Minnesota, for the sale of its threshing machines and other farm implements, and his appointment and authority as such were embodied in a written contract (Exhibits "B 1" and "B 2") which specifically stated and fixed the terms of the agency. The contract in a general way clothed the agent with authority to sell defendant's machinery on the terms and conditions specified therein, and provided that the company would furnish order blanks to the agent, which he was required to use in taking orders for machinery, whether the sales were for cash or on time; that all orders should be filled out in triplicate, one copy to be forwarded at once to the company's branch office at Minneapolis, one to be delivered to the purchaser, and the other to be retained by the agent at his office, and to contain a property statement by the purchaser and the terms and conditions of the sale; that all money, notes, and security taken by the agent on any sale should belong to the company, and that no verbal modifications in the terms of the contract would be recognized by the company; and specified particularly the terms on

which the agent was authorized to make sales. The agent agreed to abide by the contract.

In December, 1902, Shanahan sold one of defendant's threshing machines to plaintiffs, taking from them the order required by his contract of agency and in which the price and terms of sale were stated, viz.: A complete threshing outfit for the sum of $3,350, payable in three annual instalments of $850 each; and as a part of the contract, and in part payment of the purchase price, the agent agreed to accept and receive from plaintiffs certain horses and old machinery, valued at $800, which agreement was incorporated in the body of the order. The horses and old machinery were subsequently delivered to the agent, who accepted and received the same in accordance with the terms of the contract. The agent ordered the threshing machine to be sent on by defendant, and it arrived in August, 1903, consigned to Shanahan. For reasons not clearly disclosed by the evidence, the parties at about the time the machine arrived, the agent acting for defendant, rescinded the contract and plaintiffs were relieved from further obligations thereunder. Whether this rescission was brought about because of the fact that plaintiffs were unable to pay freight charges for the transportation of the machine to Worthington, as they had agreed to do by the terms of the order, or because the machine had arrived so late in the threshing season as to make it practically certain that few jobs of threshing could be then obtained, we need not stop to inquire. The fact remains that the order for the machine was canceled and the contract rescinded by mutual consent, and the agent subsequently sold the machine to other parties.

Prior to this time the agent sold the horses and old machinery delivered to him in part payment, and neither the property nor the proceeds thereof was ever returned to plaintiffs. This action was brought to recover the value of such property, on the theory that defendant was responsible for the acts of its agent and bound thereby. The defense to the action was: (1) That the contract by which the agent took the property from plaintiffs in part payment for the machine was without and beyond the scope of his authority, and unauthorized; and (2) that plaintiffs subsequently released defendant from liability on account of the transaction. Plaintiffs had a verdict in the court below, and defendant appealed from an order denying its alternative motion

for judgment notwithstanding the verdict or for a new trial. The assignments of error on this appeal necessary to be specially considered present the question whether the evidence sustains the verdict. We find no reversible errors in the record, either in the admission or exclusion of evidence, or in the charge of the court to the jury.

1. The court instructed the jury upon the principal question in the case, the authority of the agent, as follows:

> If you believe from the evidence and under the instructions that in the course of the defendant's business Shanahan made exchanges of property similar to the one in controversy here, and assuming to act for the defendant therein, and for so long a period prior to the making of the transaction in question, and during the times Exhibit B–1 and Exhibit B–2 were in force, as to fairly satisfy your minds, and to fairly justify the inference that this defendant company had given him such authority, or authority to so do, then you should resolve this question in favor of the plaintiffs.

Counsel do not complain of this as an inaccurate statement of the law, but the contention is, as we understand it, that the undisputed facts in the case render that rule of law inapplicable. We do not concur in this contention. It is thoroughly settled in this state that a principal may so conduct his business through an agent as to become liable for the acts of the agent outside of his express or actual authority. Thus in Columbia Mill Co. v. National Bank of Commerce, 52 Minn. 224, 53 N. W. 1061, it was held that on the question of the authority of an agent, the party dealing with him might prove the course and manner of business as conducted between the principal and agent, from which actual authority to do particular acts would be implied, though the party dealing with the agent did not know of such course and manner of doing business at the time of dealing with him. It was also there held that authority of the agent might be assumed or implied in cases where the principal negligently permitted him to exercise authority not expressly granted. That case was followed and applied in Best v. Krey, 83 Minn. 32, 85 N. W. 822, where the same principle was laid down and adhered to.

It is clear from an examination of the evidence in the case at bar that the rule established in those cases applies. The agent, Shanahan, was clothed with general authority to sell defendant's farm machinery, and though ordinarily he would have no implied authority to sell machines, except for cash or notes taken in accordance with the terms of his agency, the manner in which he conducted his business and was negligently permitted to conduct it by defendant is sufficient to charge defendant with liability. The agent's contract expressly provided that orders should be taken from every purchaser of machinery, that the terms and conditions of the sale should be distinctly stated therein, and that the contract so taken should be forwarded immediately to the company's branch office at Minneapolis. There was, of course, no purpose in these requirements other than to give defendant general oversight of the conduct of the agency and that it might be informed of contracts made by the agent, and it is clear that, if the agent had complied with the terms of his agency in this respect, information would have been communicated to the company of this sale and the terms and conditions thereof before plaintiffs delivered the property in question to the agent. The order was taken December 27, 1902, but the property was not delivered to the agent until the following month—a part of it on January 10, and the remainder on January 27. But the evidence discloses that the contract of agency, in this particular at least, was practically abandoned by the parties. The agent transmitted no orders taken by him to defendant, and defendant did not require him to do so, but permitted him to make sales to such purchasers as in his judgment were advisable. The general agent of defendant in charge of its Minneapolis office, to which all orders were required to be sent, testified that the company knew nothing of the orders taken by Shanahan during the entire time of his agency. The orders and notes taken for machinery were retained by the agent and never transmitted to the company— the agent was not required so to do—and the matter of sales was left entirely with him; the company's only desire being to obtain its money at the end of each season.

This, it occurs to us, beyond any question was such a negligent manner of conducting its business with the agent as to charge defendant with liability, even though it had no actual notice of the terms of this contract. If defendant had insisted upon a compliance with the terms

of the agency, it would have been informed, upon receipt of the order in question, of the fact that the agent had taken property from plaintiffs in part payment for the machine sold them. Under such circumstances it is immaterial that it did not in fact know the agent was in the habit of exceeding his authority, as want of knowledge was due to defendant's own neglect.

The evidence shows that the agent had made numerous other sales on the same terms and conditions as here under consideration, but the orders taken on those sales were, like the one in the case at bar, retained by the agent with the consent of defendant. The evidence brings the case fairly within the principle of the authorities cited, and there was no error in the instruction of the court.

2. It is claimed that subsequent to the time plaintiffs demanded of defendant a return of the property delivered to the agent, or payment of its value, plaintiffs by written contract released and discharged defendant from all liability on account of that transaction. The question whether this release was signed by plaintiffs with knowledge of its contents and for the purpose of discharging defendant from liability was properly submitted by the trial court to the jury. The release recites that, in consideration of one dollar paid to plaintiffs, they released defendant from any and all claims in damages or otherwise which they might have against it on account of the property turned over to the agent in part payment of the machine for which they gave their order. The testimony on the part of defendant is that this release was signed by plaintiffs with full knowledge of its contents, and that the consideration mentioned, one dollar, was paid to them at the time. The evidence on the part of plaintiffs is to the effect that the release was signed without knowledge of its contents; that defendant's agent, who procured plaintiffs' signature, expressly represented to them at the time it was signed that it contained nothing which would release defendant from liability on account of this property, and on the strength of that representation it was signed without reading. They also denied that the consideration expressed in the writing was ever paid to them.

It is elementary that as between the parties to a written contract, where one is induced by the false statements of the other to sign the same, he is not bound thereby and may defend against the contract on the ground of fraud, even though he was negligent in signing with-

out reading it. Alfred Shrimpton & Sons v. Philbrick, 53 Minn. 366, 55 N. W. 551; C. Aultman & Co. v. Olson, 34 Minn. 450, 26 N. W. 451; Maxfield v. Schwartz, 45 Minn. 150, 47 N. W. 448; Erickson v. Fisher, 51 Minn. 300, 53 N. W. 638; Cole v. Williams, 12 Neb. 440, 11 N. W. 875; Foster v. Mackinnon, 4 L. R. C. P. 704. This rule would not apply where the controversy arose between a party to a contract, who was fraudulently induced to sign it, and a third person; but, as between immediate parties, the defrauded one may always be heard to interpose the defense that he was induced to sign the same by the fraudulent representations of the opposite party. The evidence made this feature of the case one for the jury.

We have examined all the assignments of error, and discover no reason for reversing the case; and the order appealed from is affirmed.

Order affirmed.