M. E. SMITH & COMPANY, Respondent, v. KIMBLE, Appellant.

(139 N. W. 348.)

1.  Guaranty—Validity of—Fraud in Procuring Signing of Guaranty—Excessive Credit Under Guaranty—Pleading—Answer.

     A grantor orally agreed to guarantee payment for purchases by another to the amount of $2000., upon condition that the creditor would not give credit beyond that sum, and relied upon false representations of the creditor's agent, made to induce him to sign a guaranty, that the written guaranty prepared by the agent, and signed by guarantor without reading, expressed the oral agreement as to limiting credit, when in fact the written guaranty omitted the provision limiting the credit, and the creditor extended credit to and sold mechandise to said purchaser to the amount of about $4600.; held, that such false representations constituted a fraud upon the guarantor, defeating recovery on the guaranty. Held, further, that the answer setting up in substance these facts, states a good defense.

2.  Guaranty—Fraud—Question for Jury—Directing Verdict.

     On conflicting evidence in an action on a guaranty of payment for merchandise, held, that the question whether the creditor's agent fraudulently omitted from the written guaranty the condition of a preceding oral agreement, limiting the credit to be extended to $2000., was for the jury.

3.  Contract—Execution of Procured by Fraud—Estoppel to Deny that Guarantor was Defrauded—Consent to Contract.

     Where a written instrument has not passed from hands of original holder, it does not lie in his mouth to say defendant was not defrauded, because he was careless in trusting to representations made by holder's agent which induced its execution. Held, further, that the evidence shows defendant never consented to contract of guaranty in suit.

4.  Contract—Binding Effect of Contract—Signature Procured by Fraud—Question for Jury.

     The rule that one is conclusively bound by all terms and conditions of a written contract, executed by him, is not applicable when his signature thereto was obtained by or through fraud of original holder of the contract and rights of innocent third parties without notice do not intervene. Held, further, that plaintiff's testimony raises a question of fraud relative to existence of such contract, and that trial court erred in directing verdict.

5.  Guaranty—Offer of Guaranty—Notice of Acceptance—Question for Jury—Meeting of Minds—Evidence.

     Where creditor's agent requested a guaranty of $4000., and

guarantor said he would not guarantee to that amount but would give one for $2000., on certain conditions, and the agent then wrote the guaranty and said that, if the creditor accepted, guarantor would hear from him, held, there was no more than an offer of the guaranty, and guarantor, before his liability became fixed, was entitled to notice of acceptance. Held, further, that the test whether it was a guaranty or an offer of one, is whether or not the minds of the parties met, which question is determinable by surrounding facts and circumstances as well as from the instrument itself.

6.  Guaranty—Notice of Acceptance—Question for Jury.

In an action on an offer of guaranty of payment for merchandise purchased by another, held, that the question, resting on conflicting evidence, whether guarantor was notified of the creditor's acceptance of such guaranty, was one for the jury, and the trial court erred in directing verdict.

Haney, J., took no part in this decision.

(Opinion filed January 6, 1913.)

Appeal from Circuit Court, Davison County.   Hon. FRANK B. SMITH, Judge.

Action by M. E. Smith & Company against James Kimble, on an alleged contract of guaranty of payment for merchandise. Judgment for plaintiff on a directed verdict, and defendant appeals.   Reversed and remanded.

*T. J. Spangler,* for Appellant.

The purported guaranty in this case, in any event, was nothing more than an offer to guaranty and was of no binding force or effect until accepted by the guarantee, M. E. Smith & Co.

The Civil Code of South Dakota, section 1974, provides, "A mere offer to guaranty is not binding until notice of acceptance is communicated by the guarantee to the guarantor."

"A mere offer to guaranty is not binding until notice of its acceptance is communicated by the guarantee to the guarantor. The reason for requiring notice of acceptance of an offer of guaranty to be communicated by the guarantee to the guarantor, and this requirement of the statute is also the well settled doctrine of the courts, is that without acceptance and notice of acceptance there is not that mutual consent necessary to the existence of a contract, or in other words, there is no contract of guaranty." Standard Sewing Machine Co. v. Church et al. (N. D.) 92 N. W. 805; 14th Am. & Eng. Ency. of Law, 1146 and note 8; Machine

Co. v. Richards, 115 U. S. 524, 6 Supreme Court 173, 29 L. Ed. 480.

Now, in the case at bar the positive testimony of the defendant, James Kimble, shows that at first he refused to sign any guaranty; that Mr. Hutchinson said the house wanted a guaranty for $4,000; and that the defendant finally signed a guaranty for $2,000; and that Mr. Hutchinson, the traveling salesman of M. E. Smith & Co., said it was not what the company wanted and he did not know as the company would accept it, but that Mr. Kimble would hear from them in a short time. According to this testimony there was no mutual consent, and no agreement made at that time.

It is true that Mr. Hutchinson testified that he accepted this guaranty on behalf of the company. His testimony is very positive in that regard. Of course, he says, he told the defendant that he would later hear from the company.

Now, it may be said that here is a square conflict in the evidence on this proposition as to whether this guaranty was accepted or whether its acceptance was left for the company to make later on, and the defendant and appellant contends that this is a material question, and that it should have been submitted to the jury for their determination.

A contract, although absolute in form, guaranteeing the fulfillment of an agent's contract made without consideration in the absence and without the request of the obligee is a mere offer, which requires acceptance to be binding. Wm. Doering & Co. v. Mortell, 21 S. D. 159.

And according to the plaintiff's own testimony the plaintiff considered it necessary to accept said guaranty after they had received it in Omaha, and we surmise and suggest that probably the letter of acceptance introduced in evidence was written a considerable length of time after said guaranty was received by M. E. Smith & Co. The said purported guaranty never was accepted by the plaintiff, M. E. Smith & Co.; and there is no competent evidence sufficient to establish such acceptance. The evidence of Mr. Hutchinson, if true, shows that he was very specific and must have been well trained, for he said that he told Mr. Kimble that he accepted it for the company, but Mr. Kimble's testimony is right to the contrary, and he says that Mr. Hutchinson used

in substance the following language: "If the company accepts this, this ain't what they were looking for, if they accept it you will hear from them in a few days, you are liable to hear from them in a few days if they accept it."

If this was all the testimony there would be a square conflict in the evidence on this point, and it would clearly have been a question of fact for a jury to determine.

But it seems the company thought it necessary to accept this guaranty by letter, and the letter is very full and explicit, and great care must have been taken in writing it, which would indicate that the company realized the importance of accepting this guaranty.

It seems to us that the question as to whether this notice of acceptance was ever mailed or not was clearly a question of fact, which should have been submitted to the jury. It also had a return card and did not take the regular course of mail as it should to be notice.

In view of the case there is sufficient conflict in the testimony, we think, so that the whole question as to the acceptance of this guaranty should have been submitted to the jury.

· The next contention of the defendant, and one upon which we confidently rely, is that this pretended guaranty was procured by Mr. Hutchinson from the defendant by means of misrepresentations, fraud and undue influence. In considering this question it is necessary to have in view the condition of the parties, their experience, their relations to each other, the purpose of this guaranty and all the surrounding circumstances.

Here we have an old man, seventy-five or more years old who cannot read without glasses, and whose experience in such business transactions is very limited. Mr. Hutchinson knew this.

On the other hand we have Mr. Hutchinson, who had at that time been in the employ of the plaintiff for fourteen years, and who had had a large experience in this kind of transaction, and who understood and knew the effect and the extent of such a guaranty.

The guaranty, as it appears of record, and in evidence, is entirely different from the guaranty which Mr. Kimble proposed to give. Mr. Hutchinson knew the nature and extent of the guaranty which he had Mr. Kimble sign and he knew that Mr. Kim-

ble did not know nor understand the kind of a guaranty he was signing; and he knew when he told Mr. Kimble that the guaranty was just as they had talked that it was not the kind of a guaranty which Mr. Kimble intended to give, and we contend that there is sufficient evidence of misrepresentation and fraud to show that this question should have been submitted to the jury for determination.

Actual fraud is always a question of fact. Civil Code, Sec. 1203.

Actual fraud is defined by section 1201, and constructive fraud by section 1202, and we contend that the conduct, acts and representations of Mr. Hutchinson brings this case within said Chapter 3 of the Civil Code of South Dakota. Civil Code, Sec. 1194, to Sec. 1203; Liland v. Tweto, 125 N. W. 1032; Whitbeck v. Sees, 10 S. D. 417; 14 Am. & Eng. Ency. Law 2d Ed., 54 and following pages; Perry v. Rogers, 87 N. W. 1063, and cases cited.

It is evident that the defendant only intended to guarantee $2,000 worth of goods, a credit to the extent of $2,000 and no more; then he would have the goods to rely upon, and if Harvey failed to pay for them within a reasonable length of time he would pay for them.

And, had the guaranty been written in that way the appellant would have been safe, as the goods paid out over $2,000, and this action is for the excess, the plaintiff having extended to Harvey $4,000 or $5,000 worth of credit. Mr. Kimble never intended such a transaction as this and Mr. Hutchinson knew it when he procured this guaranty. Fogle v. Blitz, 87 N. W. 640.

Appellant's eighth assignment of error is the granting of respondent's motion for a directed verdict and on this proposition we insist that there is sufficient evidence to take this case to the jury on the following questions of fact:

1st. Was the instrument offered as a guaranty, an absolute guaranty or only an offer to guaranty?

2nd. Did the respondent ever accept this guaranty?

3rd. Was the letter of acceptance ever mailed to appellant?

4th. Was the guaranty a continuing one or was it limited to $2,000?

5th. Was this guaranty procured by fraud and misrepresentations?

There is a conflict in the testimony on these propositions, and it was for the jury to judge as to the credibility of the witnesses, weigh the evidence and decide these questions.

*Charles B. Keller,* and *Preston, Wagner & Tym,* for Respondent.

Only two defenses are interposed by the defendant in this suit:

1. That there was no acceptance of the guaranty.

2. That it was obtained upon an agreement, which is set forth in the second paragraph of the answer between Hutchinson, plaintiff's agent, and Kimble, that the plaintiff was not at any time to extend credit to Harvey to exceed $2,000, and that the guaranty as signed does not contain this agreement, which Kimble thought was in it, hence, it cannot be enforced.

The question, and the only question, for the decision of this court, is as to whether under these two issues and the evidence in support thereof, there was anything that should have been submitted to the jury, and whether the court erred (under these issues in the pleadings and accepting the testimony of Mr. Kimble as uncontradicted) in instructing the verdict for the plaintiff.

The undisputed testimony shows that the guaranty in question (Ex. "A") was signed by Mr. Kimble at the request of Mr. Hutchinson, agent of the plaintiff, and that Mr. Hutchinson, was present in Mitchell, S. D., at the time Mr. Kimble signed the same, and that Mr. Kimble signed it at his request. The guaranty itself shows (Ex. A, p. 72 Trans.) that it is not an offer to guarantee, which requires notice of acceptance, but its language is that of absolute guaranty. The guaranty (Ex. A) contains this language:

"I do hereby guarantee to the said M. E. Smith & Co., that the said H. C. Harvey will promptly pay said M. E. Smith & Co. for all goods which it may sell and deliver to him upon credit, at the time when the bills therefor become due; and I hereby agree to pay said M. E. Smith & Co. for the same when due, should the said H. C. Harvey fail, refuse or neglect to pay the same or any part thereof. I hereby waive notice of the time or amount of purchase, demand or default of payment, or non-payment, delays or extensions of time of payment and I hereby consent that such extensions may be made without notice to me or any further consent thereto without affecting in any way my liability hereunder.

"This guarantee shall be a continuing guarantee and extend to and cover all balance of account, due or owing, or to become due or owing to said M. E. Smith & Co., from November 18th, 1908, on or after this date and prior to notice in writing of the withdrawal thereof, not exceeding the sum of $2,000."

"An absolute guaranty is binding upon the guarantor without notice of acceptance."

Can there be any question from the language of this guaranty about its being an absolute guaranty and not an offer of guaranty? Further than this, it was given at the request of plaintiff's agent who was then present at the time it was signed. Fisk v. Stone, 50 N. W. 125; Davis Sewing Machine Co. v. Richards, 115 U. S. 524; William Deering & Co. v. Mortell, 21 S. D. 159.

The second defense pleaded is contained in the second paragraph of defendant's answer (pp. 11 to 13 Trans.), and is in part as follows:

"That at the time of signing the said written guaranty it was expressly understood and agreed by the agent of the plaintiff who was there present, that the plaintiff should not at any time extend to said Henry C. Harvey any credit in excess of $2,000, and that upon said condition this defendant agreed to sign a guaranty for said Henry C. Harvey guaranteeing the payment of any credit extended to him to the amount of $2,000, but that he would sign a guaranty only upon the condition that no credit should be extended by plaintiff to said Henry C. Harvey at any time exceeding $2,000," etc.

The defendant is a man of advanced age, but at the time of signing of the guaranty in question he was and he still is possessed of all his faculties, a man remarkably well preserved. He is not an illiterate man incapable of reading or writing, but on the contrary is a man of unusual business ability, having accumulated a large estate in valuable farm lands and city property.

But let us take his statement as true, that he could not see without his glasses, and that he didn't have his glasses with him at the time he signed this guaranty, and that he didn't read the guaranty nor was it read to him by Hutchinson before he signed it. What of it? Nothing of this kind is pleaded in his answer as a defense, and even if it had been, it would not constitute fraud

on the part of the plaintiff, and its agent, such as would avoid this guaranty. Fraud, i. e., the facts constituting the fraud to annul a written contract must not only be specifically pleaded, but proved, as well, by the party charging it, by clear, convincing and conclusive evidence, as stated by this court in Farlow v. Chambers, 110 N. W. 95, 21 S. D. 128. This case covers and disposes of the question of whether it is a defense to an action on a contract signed on the other party's representation that it conformed to a prior oral agreement between them, there being no fiduciary relation between the parties. Hutchinson here was representing the plaintiff as its agent, and Kimble knew that fact. Kimble was not illiterate or infirm in any way. It is not a case where he asked the plaintiff's agent to read the contract to him before he signed it and the agent read it to him wrong. He swears that Hutchinson did not read it to him at all; that he did not request it. He also swears that he did not read it at all, but admits that the contract was handed to him after it was filled out by Huchinson; that he had it in his hands and laid it on the table in front of him and signed it and handed it back to Hutchinson, and no subterfuge, trick, artifice or device was resorted to by Hutchinson to prevent his reading it or having it read to him.

All verbal negotiations and agreements prior to or contemporaneous with the execution of the written contract are merged in the written contract (Civil Code, Sec. 1239). Gardner v. Welch, 110 N. W. 110 (S. D.); Clark v. Kelsey, 41 Neb. 766; Maxwell v. Burr, 44 Neb. 31; Reynolds v. Parker, 21 Fed. 433; Wightman v. Tucker, 50 Ill. App. 75; Schriner v. Dickinson, 107 N. W. 536.

No evidence is admissible to vary or contradict the terms of a written contract unless it be first shown that by some subterfuge, by threats, coercison, trickery or artifice, a party has been prevented from knowing the contents of an instrument before signing it. None such are either pleaded or proved in this case.

In Chicago R. R. Co. v. Belloweth, 83 Fed. Rep. 437, 28 C. C. A. 358, Judge Sanborn uses this language:

"As written contract is the highest evidence of the terms of agreement between the parties to it, it is the duty of every contracting party to learn and know its contents before he signs and delivers it. He owes this duty to the other parties, to the con-

tract, because the latter may, and probably will pay his money and shape his acts in reliance upon the agreement. He owes it to the public which, as a matter of public policy, treats a written contract as a conclusive answer to the question, what was the agreement?".

This language is quoted with approval by this court in Farlow v. Chambers, supra. Upton v. Tribilcock, 91 U. S. 50; Kimber v. Young, 137 Fed. 744; Heck v. Mo. Pac. Ry. Co., 147 Fed. 775.

If the allegation in paragraph 2 of the answer quoted, supra, would not constitute fraud on the part of plaintiff even if true, then the court committed no error in directing a verdict for the plaintiff in this case. Observe that it is not claimed by Kimble as a part of this talk with Hutchinson that the guaranty was to be void and unenforceable even to the extent of $2,000, if the plaintiff sold goods to Harvey on credit in excess of $2,000, at any time, but only that it was agreed that such should not be done, with no provision of forfeiture if such was done. How easy to have so specified if such was the purpose. Again, at this very time Harvey was indebted to M. E. Smith & Company over $2,000; to-wit, $2,099.34, (Transcript, page 43), and Kimble as well as Hutchinson knew that fact. (Transcript, pages 31 and 32). So that if this defense be true, they were both engaged in making a contract which they both knew at the time was void and never could have any validity or force whatever. Again, note the very last paragraph of this guaranty.

He could not possibly have seen to sign this guaranty in the even perfect form and hand in which it was signed without seeing this language just above the signature.

We cite: Tootle v. Elgutter, 15 N. W. 228, (14 Neb. 158); Rochford v. Rothchild, 16 Oh. C. C. 287.

In the case at bar the guaranty is not only absolute in terms, but in terms is a continuing guaranty. Manry v. Waxelbaum Co., 108 Ga. 14, 33 S. E. 701.

Where credit is extended upon a guaranty and payments are afterwards made by the principal debtor the party guaranteed is not under any obligations as against the guarantor to apply the payments in satisfaction of the guaranty. London Bank v. Parrotte, 125 Cal. 472.

McCOY, P. J.    Plaintiff instituted this action to recover the sum of $2,000 from defendant upon a written contract of guaranty.    It appears that one Harvey, a son-in-law of defendant, was engaged in the retail mercantile business, and that defendant, by written contract, guaranteed to plaintiff, a wholesale dealer in merchandise, the payment of Harvey's indebtedness to the extent of $2,000.    Plaintiff's complaint contained the allegation that said guaranty was, on the 19th day of November, 1908, accepted by plaintiff through its agent who took the same, and the same was mailed to plaintiff at Omaha, Neb., and received by it on November 21, 1908, and on said date accepted by it, and on said date a letter written and mailed to defendant accepting the same.    It also appears that plaintiff extended credit to and sold to said Harvey merchandise, for which Harvey became indebted to plaintiff, to the amount of about $4,600; that said Harvey thereafter became bankrupt; and that dividends in said bankruptcy proceedings have been applied upon said indebtedness of Harvey sufficient to reduce the said indebtedness to about $2,300.    As a defense to recovery, upon said contract of guaranty, defendant by his answer admitted that he had signed a contract of guaranty of indebtedness of said Harvey, but alleged that at the time of signing said written guaranty it was expressly understood and agreed by the agent of the plaintiff, who was there present, that plaintiff would not at any time extend to Harvey any credit in excess of $2,000, and that upon such condition defendant agreed to sign a guaranty for said Harvey guaranteeing the payment of any credit extended to him to the amount of $2,000, but that he would not sign any guaranty, only upon the aforesaid condition; that said agent of plaintiff then prepared the written contract of guaranty and represented to this defendant that he had prepared it in accordance with said oral agreement, and that, believing and relying upon said representations of said agent, this defendant signed said written guaranty believing that it was in substance according to the aforesaid oral agreement between defendant and plaintiff's said agent, and that, if he signed said written guaranty, he did so by mistake and through the false representations and deceit of plaintiff's said agent, and that he was induced to sign the same by the said representations of said agent, and that said agent made said representations for the fraudulent purpose of deceiving and misleading

this defendant and inducing him to sign said guaranty by the representation of said agent that it was just as they had talked and agreed upon as hereinbefore stated; that if plaintiff had not extended to Harvey any credit in excess of $2,000 the property and stock of said Harvey would have been ample to have paid said indebtedness, and the amount which plaintiff seeks to recover from defendant upon his said guaranty is for credit extended to said Harvey in excess of $2,000, and this defendant refused to sign any guaranty for said Harvey for any credit or any balance in excess of $2,000. Defendant also denied that he ever received any notice from plaintiff by letter or otherwise of the acceptance by plaintiff of the guaranty which defendant signed and delivered to plaintiff's said agent.

At the close of all the testimony plaintiff moved the court for a directed verdict in its favor on the ground that the matters and allegations contained in the answer, and under the issues set forth in the pleadings, even if true, constituted no defense to the cause of action set forth in plaintiff's complaint; and for the further reason that under the undisputed testimony the plaintiff is entitled to a verdict for the reason that no trick, artific, or deceit has been shown by defendant, practiced by plaintiff, or its agent, upon the defendant, which constitutes any fraud on the part of plaintiff, or its agent; and for the further reason that defendant is estopped to question in any way the terms and provisions of the written instrument which he admits was executed by him under the circumstances as testified to by him and by the agent of plaintiff. The motion of plaintiff was granted, and to which ruling of the court defendant duly excepted. A verdict was then rendered for plaintiff under the direction of the court, and judgment entered thereon. Defendant appeals, assigning as error, among others, the direction of said verdict, and contends there was a dispute or conflict in the testimony upon two material issues of such a nature as to require the case to be sent to the jury to determine said disputed questions of fact.

[1] We are of the opinion that appellant is right in this contention. We are of the opinion that the answer, although loosely and inartificially drawn, states a good defense against the cause of action alleged in plaintiff's complaint. Alfred Shrimpton & Sons v. Philbrick, 53 Minn. 366, 55 N. W. 551; Maxwell v. Schwartz, 45

Minn. 150, 47 N. W. 448, 10 L. R. A. 606; Eggleston v. Advance Thresher Co., 96 Minn. 241, 104 N. W. 891; Krenz v. Lee, 104 Minn. 455, 116 N. W. 832; Cole Bros. & Hart v. Williams, 12 Neb. 440, 11 N. W. 875; Lotter v. Knospe, 144 Wis. 426, 129 N. W. 614; Providence Jewelry Co. v. Crowe, 113 Minn. 209, 129 N. W. 224; Western Mfg. Co. v. Cotton & Long, 126 Ky. 749, 104 S. W. 758, 12 L. R. A. (N. S.) 428; Cummings v. Ross, 90 Cal. 68, 27 Pac. 62; Burlington Lumber Co. v. Evans Lumber Co., 100 Iowa, 469, 69 N. W. 558; Fargo Gaslight Co. v. Fargo Electric Light Co., 4 N. D. 219, 59 N. W. 1066, 37 L. R. A. 593; Albany City Sav. Inst. v. Burdick, 87 N. Y. 40; National Cash Register Co. v. Pfister, 5 S. D. 143, 58 N. W. 270.

The defendant was called as a witness in his own behalf, and, among other things, testified that he met Mr. Hutchinson, the agent of plaintiff, at the hotel in Mitchell, and "he said to me: 'I came to see you about a guaranty. We have been selling Harvey some goods and do not feel like selling him any more unless we can get a guaranty.' And I said to him, 'How much guaranty do you want?' and he said, 'We want $4,000,' and I said: 'That is too much for a country store. I cannot give that at all.' And we talked back and forth, and I told him I would not give a guaranty, and he put very forcible arguments to me, and we had quite a lot of talk, and finally I told him that I would stand good for $2,000—they could limit the amount of goods to $2,000 and no more, and if it was not paid within a reasonable time I would see it paid, and he said, 'We will have to have it in writing,' and I told him, 'All right,' and he wrote, and says: "This is just as we talked. Do you want to read it?' And I said, 'I ain't got my glasses,' and the reason I didn't I suppose I was dealing with a friend and the instrument would be just as we talked exactly. He did not read it over to me, and I did not ask him to either. He said it was just as we talked. I relied on what he said. He said: 'If the company accepts this—this ain't what they were looking for—if they accept it, you will hear from them in a few days' I never heard a word from them until Mr. Keller, plaintiff's attorney, came to see me as he stated here today. I never received any letter from the plaintiff after I had that talk with Mr. Hutchinson."

In Shrimpton & Sons v. Philbrick, supra, the Supreme Court

of Minnesota, speaking through Mitchell, J., said: "This action was brought to recover the purchase price of certain merchandise, the principal item of which was four great gross of papers of pins, which plaintiffs claim defendant ordered, and which they shipped to him, but which he refused to accept, on the ground that he had ordered only four gross. Defendant's written order read 'four great gross'; but he alleged that the actual contract, as orally agreed on between him and plaintiff's agent, was for only four gross, but that the agent, who voluntarily assumed to reduce the contract to writing, with intent to cheat and defraud the defendant, wrote it for 'four great gross,' and then falsely represented to him that it was written in accordance with the actual agreement, and that, relying on these false and fraudulent statements, the defendant signed the order without reading it, believing that it was for only four gross, as they had agreed. If the defendant established these allegations, it would be a good defense, notwithstanding that he might have been negligent in relying on the representation of plaintiffs' agent and in signing the order without reading it." The only fraudulent act of plaintiff in that case was in making the order read "four great gross" instead of "four gross" as orally agreed upon, and then representing to defendant that the written order, presented to defendant to sign was the same as the oral agreement. In principle that case seems to be exactly in point with the case at bar.

[2] In the case present the alleged fraud on the part of plaintiff's agent was in omitting the condition of the oral agreement limiting the credit to be extended to Harvey to $2,000 and no more from the written agreement presented to defendant to sign, and in representing to defendant that the written agreement thus presented was the same as the oral agreement made between them. If this were true as alleged and testified to by defendant, and defendant, relying upon such representation, neglected to read said written guaranty, or have it read, it constituted a fraud on defendant which would avoid a recovery on said written guaranty signed by defendant under such circumstances, for the reason that the written contract of guaranty sued upon in this case contained no such condition, and defendant never consented thereto in its present state. The defendant's testimony was denied by the agent of plaintiff, who testified that he read said contract of guar-

anty over to defendant before it was signed. The testimony of the defendant, on this very material point, was in direct conflict with the testimony of plaintiff's agent, and which conflict it was the sole province of the jury to decide.

In the very recent case of Providence Jewelry Co. v. Crowe, 113 Minn. 209, 129 N. W. 224, the Supreme Court of Minnesota, speaking through Start, C. J., said:    "An examination of the record satisfies us that the evidence was sufficient to require the submission of the case to the jury.  There was evidence tending to show that the written contract for the purchase of the goods was obtained from defendant by fraud of plaintiff's agent.  It is true that the defendant was a business man, and could read, and that he signed the purchase contract.  The evidence, however, tends to show that the actual contract made by the parties was an oral one, whereby the plaintiff agreed to furnish the defendant, without cost to him, certain goods for advertising purposes, which were to be given by the plaintiff to customers as premiums; that after they had so agreed defendant said he would accept the advertising proposition and sign the order; and thereupon the agent handed to him a printed instrument for his signature, and he signed it without reading it, or knowing whether it was in accordance with the oral contract.  The instrument was not in fact an advertising proposition, but an elaborate contract, containing an advertising plan, and also an order for the purchase of goods at the agreed price of $340.35.  If the rights of third parties were here involved, the defendant's want of ordinary business prudence in signing the contract without reading it would present a serious obstacle to the maintenance of his defense.  However this may be, the fact remains that there are here no third or innocent parties. The presentation of the written contract by the plaintiff to the defendant for his signature was a representation that it was the same in effect as the oral contract as to the advertising scheme. The plaintiff knew that it was a false representation; for it had prepared the printed contract in advance.  It is also apparent that the defendant relied upon this representation to his injury, and plaintiff cannot escape from the consequences of its fraud by asserting that the defendant ought not to have confided in its integrity; for as between the original parties to a written contract a party whose signature thereto is obtained by fraud may avoid it,

although he was lacking in ordinary business prudence in the premises."

This last-cited case bases the fraudulent acts of the plaintiff's agent upon much narrower ground than is comprehended by the allegation of defendant's answer and the testimony of the defendant in this case; for in the case at bar we have the direct testimony of the defendant that the plaintiff's agent expressly stated that the written contract was the same as the oral contract talked between said agent and defendant, and that defendant relied on the said statements of said agent. To the same effect are the cases of Maxfield v. Schwartz, supra, and Eggleston v. Advanced Thresher Co., supra, also Minnesota cases. In the case of Cummings v. Ross, 90 Cal. 68, 27 Pac. 62, the Supreme Court of California, where the parties had first made a lead pencil draft of a contract, and one of the parties assumed the duty of reducing this lead pencil draft to writing and then represented to the other party that the written contract was the same as the lead pencil draft, and the other party, relying upon said statement and representation as being true, signed the written contract without reading it, and it afterwards turned out that the written contract was not the same as the lead pencil draft, it was held that the party who signed the written contract had a good and competent defense against said written contract, and the court said: "One cannot be made to stand on a contract he never intended to make—it would certainly be competent in defense to show that the instrument was fraudulent." In the case of Lotter v. Knospe, 144 Wis. 426, 129 N. W. 614, the Supreme Court of Wisconsin said: "The appellant contends that it was the legal duty of plaintiff to read the alleged receipt that was handed to him, and that he was chargeable with knowledge of its contents, whether he read it or not, and that, knowing its contents, he assented thereto by his failure to repudiate the instrument because it did not correctly embody the oral agreement. Where a party is induced to refrain from making an examination of a paper given him by another through misrepresentation as to its purport, it would be an extreme case that would warrant a court in holding that there was an assent to the contents of the document before such contents were in fact known." In this case, last cited, a portion of an oral contract embodied in a receipt had been omitted by the party who drew the

receipt and then represented to the other party that the receipt was in accordance with the oral contract. In the case of Albany City Sav. Inst. v. Burdick, 87 N. Y. 40, the New York Court of Appeals held that: "One who has intrusted the other party to a contract with the duty of reducing it to writing according to their oral agreement may rely on his representation that he has done so accurately; one who has perpetrated a fraud should not be permitted to say to the defrauded party that he ought not to have believed or trusted him; and that a party to a deed was not bound by the provisions thereof, where the same was not drawn in accordance with the previously agreed upon oral contract of the parties thereto which resulted in a fraud upon the party signing such deed."

[3] Where a written instrument has not passed from the hands of the original holder, it does not lie in his mouth to say that the defendant was not in law defrauded, because he was careless in trusting to the representations made by him which induced its execution. Mackey v. Peterson, 29 Minn. 298, 13 N. W. 132, 43 Am. Rep. 211; Cole Bros. et al. v. Williams, 12 Neb. 440, 11 N. W. 875; Nebeker v. Cutsinger, 48 Ind. 436; Spurgin v. Traub, 65 Ill. 170. The question involved on this branch of the case goes to the very existence of the contract itself. One of the vital essentials of a contract is the consent of the parties thereto. Under the testimony of the defendant in this case he never consented to the contract of guaranty sued upon.

[4] The rule that one is conclusively bound by all the terms and conditions of a written contract, which he has executed in writing, is not applicable when his signature to such written instrument was obtained by or through the fraud of the original holder of such instrument and the rights of innocent third parties without notice do not intervene. The plaintiff in this case is such holder, and the testimony of plaintiff, if true, raised a question of fraud in relation to the existence of said contract that should have been determined by the verdict of the jury, and it was therefore error for the trial court to direct a verdict with such testimony in the record. The case of National Cash Register Co. v. Pfister, 5 S .D. 143, 58 N. W. 270, though not directly in point, seems to bear out the conclusions reached herein.

[5-7] We are also of the opinion that the case should have been sent to the jury on the question of whether or not defendant was notified of plaintiff's acceptance of said guaranty. It will be observed that defendant testified that plaintiff's agent first said, "We want a guaranty for $4,000," and defendant replied that he would not give a guaranty for $4,000, but, after some talk, defendant said he would give a guaranty to the amount of $2,000 on certain conditions. The agent then wrote the guaranty, and said to defendant: "This is not what the company was looking for. If they accept it, you will hear from them in a few days." This testimony, if true, tends to show that this was no more than an offer of guaranty, and was so treated by plaintiff. It was, under such circumstances, necessary that notice of acceptance be given in order to constitute the transaction an absolute contract of guaranty, and defendant was certainly entitled to notice of plaintiff's acceptance to the end that he might know that plaintiff was looking to him to pay the bills of Harvey, and also to the end that defendant might, if he so desired, protect himself against his liability on such guaranty by making arrangements for security with Harvey. The test as to whether an instrument purporting to be a guaranty is merely an offer to become a guarantor, or an absolute contract of guaranty, is whether or not there has been a mutual meeting of the minds of the parties necessary to constitute such instrument an absolute contract of guaranty or not. This question may be determined from the surrounding facts and circumstances of the transaction as well as from the instrument itself. When defendant made the statement that he would guarantee to the amount of $2,000, that constituted a new proposition from him which must be accepted by the plaintiff, and notice thereof given to defendant, in order to constitute such transaction an absolute guaranty. When the agent said to defendant: "This is not what plaintiff is looking for. If plaintiff accepts it, you will hear from them in a few days"—tends to show that the agent did not treat the transaction as an absolute guaranty, but as an offer of guaranty only. The fact that plaintiff claims, by its testimony and also by its complaint in this action, to have notified defendant of such acceptance on the 21st day of November, 1908, two days after the execution thereof, also tends to corroborate defendant, and also tends to show that plaintiff treated said transaction as an offer to

guarantee instead of an absolute guaranty. Defendant testified that he never received any notice of acceptance. Plaintiff's testimony tended to show that he did. With testimony of this character in the record, we are of the opinion the court erred in directing said verdict. This view seems to be sustained by the following cases; Standard Sewing Machine Co. v. Church, 11 N. D. 420, 92 N. W. 805; Davis Sewing Machine Co. v. Richards, 115 U. S. 524, 6 Sup. Ct. 173, 29 L. Ed. 480; Deering v. Mortell, 21 S. D. 159, 110 N. W. 86, 16 L. R. A. (N. S.) 352; and by Rev. Civ. Code, § 1954. This court by this decision must not be understood as expressing any opinion as to the truthfulness of any of the testimony referred to herein. That is a question solely for the jury.

The judgment appealed from is reversed, and the cause remanded for a new trial.

HANEY, J., took no part in this decision.