HERREID et ux., Respondents, v. CHICAGO, MILWAUKEE
& ST. PAUL RAILWAY COMPANY, Appellant.

(159 N. W. 1064.)

(File No. 4025.   Opinion filed November 21, 1916.)

**Pleadings—Right-of-Way. Deed, Signing Without Reading—Previous
Oral Contract—Sufficiency of Complaint for Damages.**

A complaint against a railroad company for damages for
injury to a spring, alleging that plaintiffs executed, without
reading, a right-of-way deed to the land on which the spring
was located, that defendant represented to plaintiffs that the
deed was pursuant to a previous oral agreement to the effect
that such conveyance did not bar plaintiffs from recovering
damages for injury to or destruction of the spring, that plain-
tiff in signing the deed, relied upon such representations,
states a cause of action as against the objection that plaintiff
failed to allege facts excusing reading of the instrument, such
as inability to read, through poor eyesight; or lack of educa-
tion.   Fallow v. Chambers, 21 S. D. 128, distinguished.

Appeal from Circuit Court, Roberts County.   Hon. THOMAS
L. BOUCK, Judge.

Action by Albert Herreid and wife, against the Chicago, Mil-
waukee & St. Paul Railway Company, to recover damages
incidental to use of a railroad right-of-way. From an order over-
ruling a demurrer to the complaint, defendant appeals. Affirmed.

*William G. Porter,* and *Ed. L. Grantham,* for Appellants.

*Batterton & Bunde,* for Respondents.

Appellant cited: Farlow v. Chambers, 21 S. D. 128; McGee
v. Verity, (Mo.) 71 S. W. 472; Bostwick v. Mutual Life Ins.
Co., (Wis.) 92 N. W. 246; Commissioners v. Younger, 29 Cal.
172; Wallace v. Railway Co., (Iowa) 25 N. W. 772; Hazard v.
Griswold, 21 Fed. 178, 9 Cyc. 538.

Respondents cited: DeRue v. McIntosh, 26 S. D. 42, 127
N. W. 532; McCormick v. Woulph, 11 S. D. 252, 76 N. W. 939;
Sioux Remedy Co. v. Lindgren, 27 S. D. 123, 130 N. W. 49;
Civ. Code, Sec. 1249; Fotheringham v. Lockhart, 30 S. D. 394,
138 N. W. 804.

WHITING, J.   This appeal is from an order overruling a
demurrer to the complaint.   Plaintiffs seek to recover damages
which they claim to have suffered owing to defendant's running
its right of way across their land and, by excavating for same,
cutting off the supply of water feeding a valuable spring.   Antici-

pating a defense, plaintiffs allege that they executed a deed to the right of way, which deed contains a release of damages, broad enough in its terms to release the damages now sought to be recovered; and plaintiffs allege that prior to executing such deed plaintiffs and defendant entered into an oral agreement whereby defendant was to pay plaintiffs a certain sum of money for the right of way in question, it being specifically agreed that the conveyance of such right of way should in no manner preclude plaintiffs from recovering any damages that they might suffer by injury to or destruction of the spring; that, after such oral agreement was reached, the defendant, through its agent, presented to plaintiffs an instrument which such agent represented was merely a conveyance of the said right of way and would not bar or preclude plaintiffs from recovering such damages as they might suffer by any injury to or destruction of the spring; that plaintiffs relied upon such statements, believing them to be true, and believing that if they signed such instrument they would not be bound beyond the terms of said oral agreement; and that they thereupon signed such instrument without reading it.

[1] It is conceded by appellant that, if this writing is not binding upon the plaintiffs, their complaint pleads a good cause of action; but appellant contends that inasmuch as plaintiffs have failed to allege any facts excusing the reading of the instrument, such as inability to read either through poor eyesight or lack of education, the complaint fails to state a cause of action, citing Farlow v. Chambers, 21 S. D. 128, 110 N. W. 94. In the abovementioned case the question before this court was the sufficiency of the evidence to support the verdict, and, while it is true that this court made some statements and cited some authorities that would tend to support appellant's contention, such case might have been decided solely upon the ground that the burden was upon the party claiming the fraud to establish the same by clear and satisfactory evidence, and that the evidence in that case was not sufficiently clear and satisfactory. The court cited 9 Cyc. 388, wherein it is held:

"As a written contract is the highest evidence of the terms of an agreement between the parties to it, it is the duty of every contracting party to learn and know its contents before he signs and delivers it. He owes this duty to the other party to the con-

tract, because the latter may, and probably will, pay his money and shape his action in reliance upon the agreement. He owes it to the public which, as a matter of public policy, treats the written contract as a conclusive answer to the question, What was the agreement? Hence the courts do not permit one to avoid a contract into which he has entered on the ground that he did not attend to its terms, that he did not read the document which he signed, that he supposed it was different in its terms, or that it was a mere form."

But the court failed to call attention to the rule laid down in Cyc. in the same volume at page 390, to-wit:

"Of course, if the other party induces the signer to sign the paper without reading it, and to rely on his statement of the contents, this may give the signer a right, if the statement was fraudulent, to avoid the contract as against him on the ground of fraud."

In Black on Rescission of Contracts and Cancellation of Written Instruments, the author calls attention to the change toward liberality and toward the equitable rule which has taken place in the law relating to the rescission and cancellation of written instruments, and the learned author states that:

"The Procrustean standard of the ancient law, which refused all relief to the unhappy suitor unless he could show that he had exercised 'due care and diligence' to avoid being cheated, or that his conduct had been that of a 'reasonably prudent man,' was absurd, because it is precisely the credulous and unwary who are the easy victims of fraud and who need the protection of the courts.

"But now, fortunately, this outworn notion has almost everywhere given place to the better rule which we may venture to call the 'doctrine of comparative intelligence'—a doctrine which moves the courts to probe the circumstances of each particular case, instead of judging all by a hard and fast rule, which allows no advantage to a trickster because of his superior cunning, and no disadvantage to a dupe because of his careless or confiding nature or his lack of experience or shrewdness, which exacts of a defrauded person no higher degree of care or prudence than he, as an individual, might fairly have been expected to exercise, and which severely discountenances the sharper's plea that the man

he has wronged was negligent in failing to detect the trick,—a doctrine, in short, which teaches, as observed by the Supreme Court of Vermont, that 'no rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool.' "

The above is fully supported by 6 R. C. L. § 51, p. 632; Burlington Lumber Co. v. Evans Lumber Co., 100 Iowa, 469, 69 N. W. 558; Maxfield v. Schwartz, 45 Minn. 150, 47 N. W. 448, 10 L. R. A. 606; Shook v. Puritan Mfg. Co., 75 Kan. 301, 89 Pac. 653, 8 L. R. A. (N. S.) 1043; Western Mfg. Co. v. Cotton & Long, 126 Ky. 749, 104 S. W. 758, 12 L. R. A. (N. S.) 427; Hale v. Hale, 62 W. Va. 609, 59 S. E. 1056, 14 L. R. A. (N. S.) 221; Wilcox v. Am., etc., Tel. Co., 176 N. Y. 115, 68 N. E. 153, 98 Am. St. Rep. 650. In this last case the court quotes the following from an earlier decision:

"It is certainly not just that one who has perpetrated a fraud should be permitted to say to the party defrauded, when he demands relief that he ought not to have believed or trusted him. Where one sues another for negligence, his own negligence contributing to the injury will constitute a defense to the action; but where one sues another for a positive, willful wrong or fraud, negligence by which the party injured exposed himself to the wrong or fraud will not bar relief."

In the Shook case the court said:

"A person who obtains a signature by fraudulent representations, which are material and relied on by another, to the effect that an instrument expresses a previous agreement of the parties, when in fact it contains a wholly different stipulation, has no right to insist that the victim of his fraud shall be bound, although he had the opportunity to read the instrument and discover the fraud, but failed to do so. In such case the signing of the paper, without reading it, involves more than the negligence of the signer, since the signature itself was procured by the fraud of the other."

When measured by the rules laid down in the above authorities, the complaint in question states a cause of action. The order appealed from is affirmed.