#25804, #25821-a-LSW

**2011 S.D. 72**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

CLARKSON AND COMPANY,                                Plaintiff and Appellee,

v.

CONTINENTAL RESOURCES, INC.,                         Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
HARDING COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOHN W. BASTIAN
Judge

\* \* \* \*

KENNETH E. BARKER
TIMOTHY J. VANDER HEIDE of
Barker Wilson Law Firm, LLP
Belle Fourche, South Dakota                 Attorneys for plaintiff
                                            and appellee.

MICHAEL M. HICKEY
SARAH E. BARON HOUY of
Bangs, McCullen, Butler, Foye &
  Simmons, LLP
Rapid City, South Dakota

and

LAWRENCE BENDER of
Fredrikson & Byron, PA
Bismarck, North Dakota                      Attorneys for defendant
                                            and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 22, 2011

OPINION FILED **11/09/11**

#25804, #25821

WILBUR, Justice

[¶1.]        Clarkson and Company (Clarkson) owned and leased land in Harding County, South Dakota, on which Continental Resources, Inc. (Continental) conducted oil and gas exploration activities.  Continental agreed to pay Clarkson for use of and damage to Clarkson's property.  Clarkson sued Continental, seeking declaratory relief to clarify the terms of the payment agreement Continental and Clarkson made.  After cross-motions for summary judgment and a court trial, the trial court granted judgment to Clarkson for $164,102.

[¶2.]        Continental raises the following issues on appeal:

        1.    Whether the agreement calls for annual escalation of road use payments;

        2.    Whether Clarkson's claims are barred by laches;

        3.    Whether roads on land that Clarkson leased in 1981 and subsequently purchased are subject to the road use payment provision of the agreement; and

        4.    If road use payments are subject to annual escalation under the agreement, whether the consumer price index formula in the escalation clause should begin, and continue to accrue during a time period otherwise barred by the statute of limitations.

[¶3.]        By notice of review, Clarkson raises two issues on appeal:

        1.    Whether Clarkson is entitled to recover road use payments for leased roads which existed at the time of entering the agreement; and

        2.    Whether Clarkson is entitled to road use payments for 0.69 miles of existing road which Continental used to construct a new road.

[¶4.]        We affirm.

## FACTS AND PROCEDURAL HISTORY

[¶5.] Clarkson owns and leases property in Harding County. Continental conducts oil and gas exploration, discovery, and production in Harding County. In 1981, Continental's predecessor in interest, Koch Oil, entered into an agreement with Clarkson's predecessor in interest, Clarkson Land & Livestock Company, Inc., to conduct oil and gas exploration on Clarkson's property. The agreement provided that Continental would compensate Clarkson for the use of Clarkson property as well as damage caused by Continental's operations on Clarkson property. Over the years, the agreement has been the source of several disagreements. Neither party elected to bring the matter to court until 2006, when Clarkson brought this action.

[¶6.] Most of the disputes have centered on how many miles of roadway on Clarkson land are subject to road use payments under the agreement. To resolve one dispute, in 1996, the parties orally modified the agreement. The oral modification called for a "base" of 15 miles. At trial, Clarkson argued that the oral modification was provisional. However, the trial court found that the 1996 oral agreement constituted a modification of the 1981 agreement. Clarkson has not appealed this issue.

[¶7.] On appeal, the parties have two central disputes. First, the parties dispute the applicability of the Section XI "Escalation" clause to the road use payments specified under Section III(C), "Roads." Section III(C) provides that if Continental "uses a roadway already in existence and owned by [Clarkson], then, and in that event, [Continental] shall pay to [Clarkson] the sum of Seven Hundred Fifty Dollars ($750.00) per mile per year for the use of said roadway." The

escalation clause provides that "damages payable" under the contract will be adjusted for inflation each year based on the CPI:

ESCALATION

These parties agree that the damages payable by and under the terms of this Agreement as the same pertains to roads, flow lines, locations and geophysical exploration are subject to an escalation in the amount so paid, the same being hereinafter set forth.

As to the damage payment for roads, flow lines, and locations and/or sites, [Continental] agrees to pay to [Clarkson] the unit amounts specified above and in addition thereto to increase said unit amounts by ten (10) percent effective July 1, 1981, and to increase the unit amounts on July 1st each year thereafter by a percentage equal to the percentage increase in the Consumer Price Index. It is the intention of these parties that any damages determined and to be paid subsequent to July 1st of any given year shall be subjected to the percentage increase in the Consumer Price Index.

The parties filed cross-motions for summary judgment concerning the escalation payments. The trial court found that the agreement unambiguously provided that the road use payments contained in Section III(C) are "damages payable" and subject to the escalation clause and granted Clarkson's motion.

[¶8.]      Second, the parties dispute whether roads located on property leased by Clarkson are subject to the road use fee provided for in Section III(C) of the agreement. The relevant portion of the agreement provides: "In the event that [Continental] uses a roadway already in existence and owned by [Clarkson], then, and in that event, [Continental] shall pay to [Clarkson] the sum of Seven Hundred Fifty Dollars ($750.00) per mile per year for the use of said roadway." The trial court found the plain language of the provision clear. Since the agreement provides for use payments for "roadway already in existence and *owned* by" Clarkson, roads

on leased land were not subject to the fee.  (Emphasis added.)  Therefore, the trial court granted summary judgment in favor of Continental.  However, the trial court held that when Clarkson purchased land previously leased from the State, the road became subject to the annual road use payments.

[¶9.]     In January 2010, the trial court held a two-day bench trial to resolve the dispute about the effect of the 1996 oral modification and determine damages. The court entered judgment against Continental for $164,102.

## STANDARD OF REVIEW

[¶10.]     Contract interpretation is a question of law.  *Ziegler Furniture & Funeral Home, Inc. v. Cicmanec*, 2006 S.D. 6, ¶ 14, 709 N.W.2d 350, 354.  "Thus we must determine whether the trial court's interpretation of the contract was correct, and we make this determination de novo."  *Vollmer v. Akerson*, 2004 S.D. 111, ¶ 4, 688 N.W.2d 225, 227.  In addition to the contract interpretation questions, Continental also appeals the trial court's determination on the doctrine of laches. Whether or not the trial court used the correct legal standard in determining laches is a question of law, which we review de novo.  However, if the trial court applied the correct legal standard in determining laches, its findings are reviewed under the clearly erroneous standard and its application of the doctrine is reviewed for abuse of discretion.  *Tovsland v. Reub*, 2004 S.D. 93, ¶ 26, 686 N.W.2d 392, 402.

## ANALYSIS

[¶11.]     We must first determine whether Clarkson's claims are barred by laches (Continental appeal issue two).  Both parties agree that Clarkson's recovery of damages is limited to those sustained on or after June 13, 2000, because of the

applicable statute of limitations. *See* SDCL 15-2-13(1) (Civil actions upon a contract can be commenced only within six years after the cause of action shall have accrued). However, Continental argues that Clarkson's delay in bringing action should bar any recovery whatsoever under the doctrine of laches. We agree with the trial court that Clarkson's claim is not barred by laches.

[¶12.]     Laches is an equitable remedy which will apply when the defendant can show that the plaintiff "(1) had full knowledge of the facts upon which the action was based, (2) regardless of this knowledge, he engaged in an unreasonable delay before seeking relief in court, and (3) that it would be prejudicial" to allow the plaintiff to maintain the action. *In re Admin. of C.H. Young Revocable Living Trust*, 2008 S.D. 43, ¶ 10, 751 N.W.2d 715, 717 (citations omitted). Because laches is an affirmative defense, Continental "has the burden of proof" for each of the three elements. *Zephier v. Catholic Diocese of Sioux Falls*, 2008 S.D. 56, ¶ 9, 752 N.W.2d 658, 663. Although there is no dispute that there was considerable delay in bringing this action, "[l]aches does not depend upon passage of time alone; plaintiff must be chargeable with lack of diligence in failing to proceed more promptly." *Conway v. Conway*, 487 N.W.2d 21, 25 (S.D. 1992).

[¶13.]     The trial court found that Continental had not shown any significant prejudice. Continental disagrees. Specifically, Continental argues that allowing this action subjected it to evidentiary and economic prejudice. Despite such arguments, as the trial court found, "there is scant evidence of the same in the record." To the contrary, the record shows that Continental was well aware of continuing disagreements between the parties. Thus, Continental should have been

well aware of the possibility of litigation and therefore cannot be prejudiced by this action.

[¶14.]      Moreover, Continental provides no legal authority to support its contention that economic prejudice is a type of prejudice that the equitable remedy of laches seeks to address.  Even if it is presumed that "economic prejudice" can sustain a laches defense, it is questionable, at best, whether Continental has been subject to such prejudice.  Continental argues that Clarkson's dilatory claim has caused it to be subject to excessive prejudgment interest on overdue escalated payments.  Even assuming this to be true, Continental has received the corresponding economic benefit of retaining the money owed under the agreement well past its actual due date.  We agree with the trial court's conclusion that the doctrine of laches does not bar this action by Clarkson.

[¶15.]      Since we find that Clarkson's claims are not barred by laches, we must address the various issues raised by the parties as to the proper meaning of the agreement.  The disputes center on the language contained in two portions of the agreement: (1) Section XI "Escalation" (the Escalation Clause) and (2) Section III(C) "Roads" (the Road Use Payment Clause).  When interpreting a contract, "[t]his Court looks to the language that the parties used in the contract to determine their intention." *Pauley v. Simonson*, 2006 S.D. 73, ¶ 8, 720 N.W. 2d 665, 667-68 (citations omitted).  If the intent of the parties is "clearly manifested" by the plain language of the agreement, "it is the duty of this Court to declare and enforce it." *Id.* (citations omitted).

**The Escalation Clause**

[¶16.]     The Escalation Clause provides that "damages payable" under the agreement are to be increased each year "by a percentage equal to the percentage increase in the [CPI]." Clarkson claims that the agreement unambiguously provides that annual road use payments, as set forth in Section III(C) of the agreement, are "damages payable" and therefore subject to the escalation clause. Continental disagrees. According to Continental, the agreement distinguishes between "damages" and "use" and the plain language of the escalation clause does not provide for the escalation of "use" fees. The trial court agreed with Clarkson and granted Clarkson's motion for partial summary judgment and denied Continental's motion.

[¶17.]     **1.     Whether the agreement calls for annual escalation of road use payments (Continental appeal issue one).**

[¶18.]     Continental argues that the agreement distinguishes between "damage" fees and "use" fees. Therefore, since the Escalation Clause explicitly references "damage" fees but makes no mention of "use" fees, it was the intention of the parties that only damage fees be subject to escalation. Although it is true that the escalation clause does not explicitly reference road "use" fees, such a narrow reading overlooks the general context in which the language appears.

[¶19.]     First, the payment for roads—whether for use of an existing road or new construction—is found under Section III "Future Surface Damages." The trial court found such to be "an implicit acknowledgement of the obvious: damage to Clarkson's land results from new road construction and from use of existing roads." Indeed, the parties explicitly acknowledge this fact in the prefatory, or

"Witnesseth," section which provides that "the exploration activities on and under such properties of [Clarkson] by [Continental] have and will continue to restrict the use of or to damage the surface owned or leased by [Clarkson]." For example, when Continental uses Clarkson's roads, Clarkson is not able to enjoy use of its roads, thereby causing Clarkson "damages."

[¶20.] Second, the escalation clause specifically provides that it applies to "*roads*, flow lines, locations and geophysical exploration," but, at the same time, does not contain any limiting language indicating that it was the intent of the parties that existing roads should be treated differently than newly constructed roads. (Emphasis added.) Third, as the trial court noted in ruling in favor of Clarkson's motion for summary judgment on the issue, as a matter of logic, "it would seem unusual that the parties intended to freeze the amount paid for road use for over twenty-five years without any express intention of the same." For the foregoing reasons, we agree with the trial court.

[¶21.] **2. If road use payments are subject to annual escalation under the agreement, whether the consumer price index formula in the escalation clause should begin, and continue to accrue during a time period otherwise barred by the statute of limitations (Continental appeal issue four).**

[¶22.] Continental claims that if road use payments are subject to annual escalation under the agreement, Clarkson should not benefit from the accumulation of inflation prior to 2000 since the statute of limitations bars claims for that period. Such a result is achieved by setting the CPI to 100 in the year 2000 (as opposed to 171.3, the actual CPI for the year 2000) and then adjusting for inflation from that point forward. Continental offers no authority to support its position.

[¶23.]     The trial court found that the CPI rate should accrue from 1981 to the present date with Clarkson's damages commencing in 2000. We agree with the trial court that the statute of limitations does not prevent Clarkson from recovering for inflation adjustments under the escalation clause during the barred period. The agreement clearly and unambiguously establishes 1981 as the base year for the calculation. To rule otherwise would defeat the purpose of such a clause which is to allow Clarkson the ability to keep up with inflation. Therefore, the CPI rate should be applied from 1981 to the present date with Clarkson's damages calculated commencing in 2000.

## The Road Use Payment Clause

[¶24.]     Section III(C) provides that "[i]n the event that [Continental] uses a roadway already in existence and owned by [Clarkson], then, and in that event, [Continental] shall pay" Clarkson $750 per mile per year for the use of the road. In granting Continental's motion for summary judgment, the trial court reasoned that "[i]f the parties meant to include leased land in the provision at issue, the contract would so state. Accordingly, ext[r]insic evidence is unnecessary to determine the parties' intent." However, in determining damages, the trial court found that nothing in the agreement suggested that Continental should be exempt from paying compensation to Clarkson when it uses an existing road on land purchased by Clarkson after 1996 (the year the parties entered into the oral modification). Continental disagrees with the trial court's ruling as it applies to after-acquired ownership of leased land and Clarkson disagrees with the trial court's ruling on this issue because it required ownership prior to the application of the road use fee.

[¶25.]    **1.    Whether Clarkson is entitled to recover road use payments for leased roads which existed at the time of entering the agreement (Clarkson notice of review issue one).**

[¶26.]    Clarkson argues that the trial court erred when it found that the phrase "owned and existing" as used in the second paragraph of Section III(C) of the agreement limited its application to roads on land Clarkson owned. We agree with the trial court.*

[¶27.]    As Clarkson itself points out, in several sections the agreement refers to land "owned and/or leased" by Clarkson. Notably, the first paragraph of Section III(C) uses such terminology in establishing payment due to Clarkson for roads built or constructed by Continental. The relevant language provides, "[Continental] agrees to pay [Clarkson] the sum of [$2.50] per rod of road built or constructed in any fashion on and across the surface of *land owned and/or leased* by [Continental]." (Emphasis added.) In contrast, the second paragraph of Section III(C), which governs road use payments, refers only to land *owned* by Clarkson. This contrasting use demonstrates that if the parties intended to include leased land for the payment at issue, they would have used the term "leased" as they did in other parts of the contract.

---

\*    We also note that the trial court made a finding that, in 1996, when the parties agreed to an oral modification, establishing a 15-mile base for the road use fees, both parties relinquished the right to have the actual mileage measured. The court further found that such an agreement was in the parties' best interest because it allowed them to resolve the road use mileage dispute and establish a base number of road miles subject to road use payments going forward. Clarkson did not appeal the trial court's finding of fact that the 15-mile agreement applies to all roads Continental used as of 1996.

[¶28.]    Clarkson points to SDCL 45-5A-3(7) to support its reading of the plain language of the agreement. The statute, which addresses "Compensation for Damages From Mining, Oil and Gas Development" provides a definition of "Surface Owner." According to the statute, a "Surface Owner" is "the person who has possession of the surface of the land, if other than the mineral developer, either as an owner or *as a lessee*." SDCL 45-5A-3(7) (emphasis added). However, we find this argument to be of limited persuasive value for two reasons. First, Clarkson did not raise the argument at trial, and therefore, raising it now is a new legal theory which may not be considered for the first time on appeal. *Alvine Family Ltd. P'ship v. Hagemann*, 2010 S.D. 28, ¶ 21, 780 N.W.2d 507, 514. Second, the statute was enacted in 1982, the year after the agreement was drafted. Therefore, even if this Court were to consider the statute when determining the intention of the parties, it would hold little probative value.

[¶29.]    **2.    Whether roads on land that Clarkson leased in 1981 and subsequently purchased are subject to the road use payment provision of the agreement (Continental appeal issue three).**

[¶30.]    The plain language of the agreement is consistent with the trial court's ruling that Continental must compensate Clarkson when it uses an existing road on land purchased by Clarkson following the 1996 oral modification. The agreement provides that Continental must pay the annual use fee "[i]n the event that [it] uses a roadway already in existence and owned by" Clarkson. We read the adverb "already" to modify "in existence," but not "owned." As a result, when Clarkson purchased a portion of the land it had previously leased from the State, Clarkson was entitled to receive compensation under the agreement's road use payment

provision. Therefore, the trial court correctly found that the land Clarkson purchased from the State in 2006 is subject to the road use damage payments.

[¶31.] **3. Whether Clarkson is entitled to road use payments for 0.69 miles of existing road which Continental used to construct a new road (Clarkson notice of review issue two).**

[¶32.] Finally, under the terms of the agreement, Clarkson is to be compensated if (1) Continental uses a road already in existence or (2) constructs a road. In 2004, Continental built a 0.69 mile road on or near an existing track or trail that was unusable by Continental. Clarkson argues that the two fees are not mutually exclusive; and therefore, Clarkson is entitled to payment under both the road use and road construction provisions for this stretch of road. The trial court found that when Continental builds a new road over an existing track or trail, it is not "using" the old road. Therefore, Clarkson is not entitled to a road use payment for this road. We agree.

## CONCLUSION

[¶33.] We affirm the trial court's construction of the plain language of the agreement and the judgment against Continental for $164,102.

[¶34.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and SEVERSON, Justices, concur.

-12-