#26127-r-LSW

**2012 S.D. 38**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

HIGHMARK FEDERAL
CREDIT UNION,                                         Plaintiff and Appellant,

v.

WELLS FARGO FINANCIAL
SOUTH DAKOTA, INC.,                              Defendant and Appellee,

and

NEIL R. WOOD, KIMBERLY M. WOOD,
WELLS FARGO FINANCIAL BANK,
AAA COLLECTIONS, CITIBANK (SD) NA,
and CREDIT COLLECTIONS BUREAU,          Defendants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
BUTTE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOHN W. BASTIAN
Judge

\* \* \* \*

RODNEY C. LEFHOLZ
Rapid City, South Dakota                    Attorney for plaintiff and
                                            appellant.


DAVID C. PIPER of
Mackoff Kellogg Law Firm
Dickinson, North Dakota                     Attorneys for defendant and
                                            appellee.

\* \* \* \*

ARGUED ON MARCH 21, 2012

OPINION FILED **05/23/12**

#26127

WILBUR, Justice

[¶1.]     This foreclosure action involves a dispute between two creditors, Wells Fargo Financial South Dakota, Inc. (Wells Fargo) and Highmark Federal Credit Union (Highmark), about the priority of their respective mortgage liens against a property. Both parties assert that they are entitled to first priority. The trial court found that, despite Highmark's statutory priority, under the doctrine of equitable subrogation, Wells Fargo was entitled to first priority and granted Wells Fargo's motion for summary judgment. We reverse.

## FACTS AND PROCEDURAL BACKGROUND

[¶2.]     Neil and Kimberly Wood purchased a home in Belle Fourche. To finance the purchase of their home, the Woods borrowed $120,290 from First Franklin Financial Corporation (First Franklin). To secure the loan, First Franklin filed a lien against the home. Approximately two years later, the Woods obtained a home equity line of credit from Highmark. Highmark also filed a lien against the home to secure the line of credit. The Woods later refinanced their home with Wells Fargo and received a $168,708.35 loan. The Woods used the proceeds from the loan to pay off both First Franklin and Highmark. First Franklin's lien against the Woods' home was subsequently discharged.

[¶3.]     Although the Woods used the proceeds to pay their entire outstanding balance with Highmark, Highmark's lien was not discharged. Because Highmark's lien was a collateral real estate mortgage, under SDCL 44-8-26, even when the balance of the real estate mortgage was reduced to zero, the law provides that the lien continues because of the potential of future advances. Specifically, SDCL 44-8-

26 provides that a collateral real estate mortgage can only be discharged when the outstanding balance is zero and the mortgagor "demand[s] in writing that the mortgage be satisfied." Although Wells Fargo paid the Woods' outstanding loan balance with Highmark, the Woods did not make a written demand that the mortgage be satisfied. Nor did Wells Fargo ask or require the Woods to make this demand. Thus, Highmark's lien continued and, because it was created first, took statutory priority over Wells Fargo's newly created lien. *See* SDCL 44-2-1 ("Other things being equal, different liens upon the same property have priority according to the time of their creation.").

[¶4.] Also, because the line of credit remained open, the Woods were able to draw on the account and borrowed an additional $24,000 from Highmark. Eventually, Wells Fargo provided Highmark a writing signed by Mr. Wood which asked Highmark to close the line of credit. At this time, Highmark stopped making further advances to the Woods. However, because the balance of the mortgage was not zero when the Woods delivered the written demand, Highmark's lien against the home continued.

[¶5.] When the Woods defaulted on their mortgage with Highmark, Highmark brought a foreclosure action and joined Wells Fargo as a co-defendant because of its lien against the Woods' home. Subsequently, Highmark and Wells Fargo each brought motions for summary judgment. The competing motions asked the trial court to conclude that the respective moving party had first priority on the proceeds from the sale of the Woods' home. Highmark argued that it had priority under the South Dakota recording statutes because it recorded its mortgage prior to

the date Wells Fargo recorded its mortgage. Wells Fargo argued it had priority under the doctrine of equitable subrogation because it paid the Woods' outstanding balance with First Franklin in full and was therefore entitled to assume First Franklin's priority position. The trial court agreed with Wells Fargo and granted its motion. Highmark appeals the trial court's application of equitable subrogation.

## STANDARD OF REVIEW

[¶6.] Whether or not the trial court used the correct legal standard in determining lien priority is a question of law. However, if the trial court applied the correct legal standard in determining lien priority, its findings are reviewed under the clearly erroneous standard and its application of the doctrine of equitable subrogation is reviewed for abuse of discretion. *See Clarkson & Co. v. Cont'l Res., Inc.,* 2011 S.D. 72, ¶ 10, 806 N.W.2d 615, 618 (applying the same standard of review in the context of laches, an equitable defense). Because Highmark only contests the trial court's application of the doctrine of equitable subrogation to overcome Highmark's statutory priority, the resolution of this case turns on whether the trial court abused its discretion in applying the doctrine.[1]

---

1. Wells Fargo argues in its brief that we should not reach the merits of Highmark's appeal for two reasons. First, according to Wells Fargo, Highmark did not timely file its appeal within the 30 days of a judgment or order as required by SDCL 15-26A-6. Wells Fargo waived this argument during oral arguments.

   Second, Wells Fargo argues the record does not show that Highmark questioned the applicability of the doctrine of equitable subrogation and therefore Highmark is precluded from raising the argument now on appeal. However, the only issue argued on appeal is that of lien priority in a mortgage foreclosure. This is the precise issue presented before the trial court, and thus, Highmark has not waived the issue.

## ANALYSIS AND DECISION

[¶7.] This Court has not addressed equitable subrogation in the context of real property since our decisions in *Buhl v. McDowell*, 60 S.D. 22, 242 N.W.2d 638 (1932) and *Bank of Ipswich v. Brock et al.*, 13 S.D. 409, 83 N.W.2d 436 (1900).[2] However, we have recently applied equitable subrogation in the context of insurance. In doing so, we have recognized that "[a] court of equity is not at liberty to disregard the contract of the parties in this respect where deliberately made and clearly expressed, for equity follows the law and will neither make a new contract for the parties nor violate that into which they have freely and advisedly entered." *Met Life Auto & Home Ins. Co. v. Lester*, 2006 S.D. 62, ¶ 19, 719 N.W.2d 385, 388-89. A similar logic applies to statutes: "While equity has the power to pierce rigid statutory rules to prevent injustice, where substantial justice can be accomplished by following the law, and the parties' actions are clearly governed by rules of law, equity follows the law" and "[a]ccordingly, under the doctrine, courts of equity cannot modify or ignore an unambiguous statutory principle in an effort to shape relief." 30A C.J.S. *Equity* § 128 (2012).

[¶8.] Here, equity did not require the trial court to pierce the South Dakota recording statutes. Under SDCL 44-8-26, Wells Fargo had the option to protect its security interest in the Woods' home but did not fulfill the statutory requirements. Pursuant to SDCL 44-8-26, Wells Fargo could have required the Woods to both

---

2. In *Buhl* and *Ipswich*, this Court used the term "legal subrogation." Legal subrogation, in this context, is synonymous with equitable subrogation. *See* Restatement (Third) of Restitution & Unjust Enrichment § 24 (2011) ("The claim described in this section, usually known as 'equitable subrogation,' may also be called 'legal subrogation' or 'equitable assignment.'").

satisfy its mortgage with Highmark and "demand in writing that the mortgage be satisfied" when it refinanced the Woods' mortgage. Although Wells Fargo provided the Woods with the funds to satisfy its loan with Highmark, despite the statutory directive, Wells Fargo did not simultaneously require the Woods to make the written demand of Highmark to satisfy the Woods' mortgage. Rather, Wells Fargo did not require the Woods to make the written demand until after Highmark had loaned the Woods additional money against the line of credit. At this point, it was too late to satisfy the clear requirements of SDCL 44-8-26, as the balance on the collateral loan was no longer zero.

[¶9.] Wells Fargo's failure to make written demand, be it willful, inadvertent, or negligent, is sufficient reason, in this circumstance, for this Court to refuse to set aside a statute and invoke an equitable remedy.[3] Thus, because Highmark filed its lien on the Woods' home prior to Wells Fargo, we reverse the grant of summary judgment and hold that Highmark has priority under SDCL 44-2-1.

[¶10.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and SEVERSON, Justices, concur.

---

3. In reaching this conclusion, we recognize that courts in other jurisdictions have recently applied the doctrine of equitable subrogation to overcome statutory priority in certain situations. In doing so, these courts have applied an assortment of different legal standards. *See Bank of Am., N.A. v. Prestance Corp.*, 160 P.3d 17, 21 (Wash. 2007) (en banc) (detailing the different approaches courts have taken). Under the facts presented here, we decline to recognize equitable subrogation as being applicable. Whether this Court should ever apply the doctrine to overcome statutory priority under SDCL 44-2-1 is a question for another day.