#26223, #26226-rev & rem-LSW

**2013 S.D. 17**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ROB POEPPEL,                                      Plaintiff and Appellee,

    v.

LUCAS LESTER,                                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE WALLY EKLUND
Judge

\* \* \* \*

JESSICA L. LARSON
STEVEN C. BEARDSLEY of
Beardsley, Jensen, &
  Von Wald, Prof., LLC
Rapid City, South Dakota                 Attorneys for plaintiff
                                         and appellee.


MICHAEL V. WHEELER of
DeMersseman Jensen Tellinghuisen
  Stanton & Huffman, LLP
Rapid City, South Dakota                 Attorneys for defendant
                                         and appellant.

\* \* \* \*

ARGUED ON AUGUST 29, 2012

OPINION FILED **02/13/13**

WILBUR, Justice

[¶1.]	In 2008, Rob Poeppel brought suit against Luke Lester for breach of contract for Lester's failure to purchase Poeppel's voting interest in Coldwell Banker Lewis-Kirkeby-Hall Real Estate, Inc. (CBLKH).  Following Lester's stipulation as to breach, a court trial was held on the issue of damages.  The court awarded damages to Poeppel in the amount of $250,000 plus prejudgment interest and costs.

## FACTS AND PROCEDURAL BACKGROUND

[¶2.]	Poeppel was the owner of a 25% (100 no-par shares) voting interest in CBLKH.  In March 2008, Lester, an independent contractor and broker associate at CBLKH, approached Poeppel about purchasing Poeppel's 25% voting interest in the company.  Also during this time, Mel Dreyer, another broker associate of the company, approached Diana Hooper, another owner of a 25% voting interest in CBLKH, about Dreyer purchasing Hooper's 25% voting interest.

[¶3.]	On March 28, 2008, Poeppel and Lester entered into a contract for the sale of the shares.  The parties agreed that Poeppel would sell Lester one hundred shares (25%) of no-par CBLKH voting stock for $500,000.  The contract signed by the parties was a form that Lester received from Dreyer.  Dreyer had used the form during his negotiations with Hooper.  Lester then made changes to the contract and presented it to Poeppel for signature.  Paragraph five of the contract entitled "Access to Information" provides:

> The parties acknowledge that Seller has provided to Buyer
> certain financial information with respect to the Shares and that
> Buyer has formed his own opinion as to the value of the Shares
> being purchased hereunder.  Notwithstanding the foregoing,

> prior to Closing, Seller shall, or shall cause the Company to, provide to Buyer and to Buyer's counsel, accountants, or other representatives full access throughout the period prior to Closing to all of the Company's properties, books, contracts, commitments, and records, and shall furnish to Buyer during such period all information concerning the Company's affairs as the Buyer may reasonably request. SELLER MAKES NO WARRANTY OF THE INCOME PRODUCING ABILITY OF THE SHARES OR THE PROFITABILITY OF THE COMPANY. BUYER RECOGNIZES THAT THE VALUE OF THE SHARES IS DEPENDENT IN PART UPON BUYER'S SKILL AND ABILITY.

Additionally, paragraph seven, section c, "Warranties of Buyer," provides: "That all documents and records requested by Buyer have been delivered or made available to Buyer, and Buyer's investment decision is based upon Buyer's own investigation and analysis and not the representations or inducements of Seller or Seller's agents."

[¶4.] The closing date on the contract was set for May 15, 2008. Lester failed to attend the closing and did not pay $500,000 for Poeppel's shares. Additionally, Lester notified Poeppel in a letter dated May 22, 2008, that he was unable to secure financing with the right structure for the purchase of the stock.

[¶5.] After continued negotiations between the parties failed, Poeppel brought suit for breach of contract against Lester in September 2008. In his answer, Lester raised the defense that his consent to enter into the contract was obtained by fraud. Lester alleged that Poeppel failed to give him important financial information regarding the company; made a false claim about the income producing ability of the shares of stock; and told Lester that the company held an exclusive franchise with Coldwell Banker.

[¶6.]     Poeppel moved for summary judgment on three separate occasions alleging that the contract was unambiguous as to Lester's receipt of CBLKH's financial information. Each motion was denied.

[¶7.]     A trial was scheduled for November 2-3, 2011. On the day before trial, the trial court concluded that the terms of the contract were unambiguous and that parol evidence as to financial documents was inadmissible. The court also granted Poeppel's motions in limine to exclude evidence relating to CBLKH's financial information and to exclude statements made by Poeppel to Lester concerning income that was generated by the stock and the exclusive franchise agreement. Following these rulings, Lester stipulated to the breach of contract.

[¶8.]     The issue of damages was tried in a court trial on November 3, 2011. The trial court entered judgment against Lester for $250,000 plus prejudgment interests and costs.

[¶9.]     On appeal, the issues presented are:

1.     Whether the trial court erred as a matter of law in concluding that the contract was unambiguous.

2.     Whether the trial court abused its discretion in granting Poeppel's motions in limine regarding financial information.

3.     Whether the trial court erred in denying Lester's motion to amend, thus precluding any evidence of a "put" option.

4.     Whether the trial court's findings as to the calculation of damages were clearly erroneous.

## ANALYSIS

[¶10.]     Before the Court begins its analysis of the issues presented, it is important to note that after the trial on damages, the court did not enter separate,

-3-

formal findings of fact and conclusions of law. The court filed a memorandum decision and a judgment. The trial court was apparently operating under the first sentence of the second paragraph of SDCL 15-6-52(a), as suggested in a letter to the court from Poeppel's counsel. There was no objection by Lester's counsel.

[¶11.]     The second paragraph of SDCL 15-6-52(a) was amended in 2006 to provide, in pertinent part:

> ~~A copy of the proposed findings shall be served upon the attorneys of record to the action or upon the parties of record to the action if not represented by counsel. The~~ <u>It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence, or appear in an opinion or memorandum of decision filed by the court. Alternatively, the</u> court may direct counsel for the prevailing party to prepare findings; and counsel shall, within ten days after announcement of <u>the</u> decision, unless otherwise ordered, prepare, serve, and submit to the court with copies to opposing counsel, <u>or to the parties of record to the action if not represented by counsel,</u> proposed written findings of fact and conclusions of law together with the proposed judgment or decree.

2006 S.D. Sess. Laws 484, ch. 326, Supreme Court Rule 06-52. The statute further provides: "If an opinion or memorandum of decision is filed, the facts and legal conclusions stated therein need not be restated but may be included in the findings of fact and conclusions of law by reference." SDCL 15-6-52(a).

[¶12.]     This Court has yet to specifically examine a case implementing the Supreme Court's 2006 amendment to SDCL 15-6-52(a). "When interpreting a statute, we 'begin with the plain language and structure of the statute.'" *In re Pooled Advocate Trust*, 2012 S.D. 24, ¶ 32, 813 N.W.2d 130, 141 (quoting *State ex rel. Dep't of Transp. v. Clark*, 2011 S.D. 20, ¶ 10, 798 N.W.2d 160, 163).

[¶13.]     Based on a plain reading of the language and structure of SDCL 15-6-52(a), it is apparent that the trial court utilized, and the parties agreed to, one of the methods by which findings of fact and conclusions of law may be entered. Here, the trial court entered a "memorandum of decision," which included its findings of fact and conclusions of law. This method is acceptable under the plain reading of SDCL 15-6-52(a), and thus, enumerated findings of fact and conclusions of law were not necessary.

[¶14.]     **Whether the trial court erred in concluding that the contract was unambiguous and in granting Poeppel's motions in limine.**

[¶15.]     The trial court concluded that the language of the contract is clear and unambiguous and that it would "stay with the language of the contract." Based on this conclusion, the trial court also granted Poeppel's motion in limine to prohibit Lester from introducing parol evidence that Poeppel had represented to Lester: (1) that Lester could not receive financial documents until after he signed the contract; (2) that the stocks Lester sought to purchase would generate approximately $115,000; and (3) that the company had an exclusive franchise arrangement with Coldwell Banker.

[¶16.]     "'Contract interpretation is a question of law' reviewed de novo." *Detmers v. Costner*, 2012 S.D. 35, ¶ 20, 814 N.W.2d 146, 151 (quoting *Clarkson & Co. v. Cont'l Res., Inc.*, 2011 S.D. 72, ¶ 10, 806 N.W.2d 615, 618). "'When interpreting a contract, this Court looks to the language that the parties used in the contract to determine their intention.'" *Id.* (quoting *Clarkson & Co.*, 2011 S.D. 72, ¶ 15, 806 N.W.2d at 619). "'In order to ascertain the terms and conditions of a contract, we examine the contract as a whole and give words their plain and

ordinary meaning.'" *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 2007 S.D. 34, ¶ 13, 731 N.W.2d 184, 191 (quoting *Canyon Lake Park, L.L.C., v. Loftus Dental, P.C.*, 2005 S.D. 82, ¶ 17, 700 N.W.2d 729, 734). "'When the words of a contract are clear and explicit and lead to no absurd consequences, the search for the parties' common intent is at an end.'" *Detmers*, 2012 S.D. 35, ¶ 20, 814 N.W.2d at 151 (quoting *Nelson v. Schellpfeffer*, 2003 S.D. 7, ¶ 8, 656 N.W.2d 740, 743).

[¶17.]     The express language of the contract, when read as a whole, is clear and unambiguous. By signing the contract that he presented to Poeppel, Lester represented that he received financial documents from Poeppel and that Lester formed his own opinion as to the value of the shares.

[¶18.]     However, even though the contract was unambiguous, Lester should have been allowed to present his defense to a jury that he was fraudulently induced to sign the stock purchase agreement through several misrepresentations made by Poeppel. The trial court erred as a matter of law by barring this evidence under the parol evidence rule.

[¶19.]     South Dakota's parol evidence rule provides: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." SDCL 53-8-5. This rule "'is in no sense a rule of evidence, but a rule of substantive law.'" *Auto-Owners Ins. Co. v. Hansen Housing, Inc.*, 2000 S.D. 13, ¶ 14, 604 N.W.2d 504, 510 (quoting 9 John Wigmore, Evidence § 2400 at 4 (Chadbourn rev. ed. 1981)). A decision concerning application of the parol evidence rule should be reviewed de novo as a question of

law.  *See, e.g.*, *Conn Acoustics, Inc. v. Xhema Const., Inc.*, 870 A.2d 1178, 1181 (Conn. App. Ct.  2005).  In excluding Lester's fraud evidence, the trial court ruled, as a matter of law, that the parol evidence rule precluded any extrinsic evidence. Yet the parol evidence rule does not apply in cases of fraud in the inducement.

### 1.  Fraud in the Inducement

[¶20.]　　　Fraud as an inducement to enter a contract is a question of fact for the jury.  "Actual fraud is always a question of fact."  SDCL 53-4-5.  And parol or extrinsic evidence is admissible to prove fraud.  "It is generally agreed that the parol evidence rule does not bar extrinsic evidence to show fraud as a ground for rescission . . . ."  E. Allen Farnsworth, Contracts § 7.4 at 429 (4th ed. 2004).  The parol evidence rule is simply not applicable when fraud has been employed as enticement to enter a contract.  So universal is this principle that Professor Farnsworth writes, "[T]here is very little that the parties can do in their agreement to prevent the use of extrinsic evidence to attack the written agreement on" grounds of fraud.  *Id*. at 430.  Additionally, "evidence of misrepresentation is admissible even if the agreement is completely integrated, . . . [even] in the face of the usual merger clause . . . ."  *Id*.  Likewise, the Restatement provides:

> Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish
>
> ***
> (d) illegality, fraud, duress, mistake, lack of consideration, or other invalidating cause . . . .

Restatement (Second) of Contracts § 214(d) (1981).

[¶21.]　　　In South Dakota, this principle has been in place since early statehood. "Great latitude . . . has been allowed in the admission of parol evidence to prevent

fraud or injustice." *D.M. Osborne & Co. v. Stringham*, 1 S.D. 406, 47 N.W. 408, 409 (1890); *see M.E. Smith & Co. v. Kimble,* 31 S.D. 18, 139 N.W. 348 (1913). No matter how clear and unambiguous a contract might be, parol evidence may be offered to show that the contract is invalid because of fraud in its inducement. *See Engles v. Ranger Bar, Inc.*, 2000 S.D. 1, ¶ 15, 604 N.W.2d 241, 245; *Holmes v. Couturier*, 452 N.W.2d 135, 137 (S.D. 1990); *Sabbagh v. Prof'l & Bus. Men's Life Ins. Co.*, 116 N.W.2d 513 (S.D. 1962). Were it not so, contracting parties could insulate themselves from their own fraud.

[¶22.]     A substantial majority of jurisdictions follow the traditional, majority view that the parol evidence rule is inapplicable in cases of fraudulent inducement. As one California court explained, "'A party to a contract who has been guilty of fraud in its inducement cannot absolve himself from the effects of his fraud by any stipulation in the contract, either that no representations have been made, or that any right which might be grounded upon them is waived.'" *Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp.*, 38 Cal. Rptr. 2d 783, 788 n.7 (Cal. Ct. App. 1995) (additional citation omitted). Many other courts have held similarly.* Promoting honesty in contractual relations forms part of the rationale:

---

\*     *See, e.g., Nw. Bank & Trust Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 726 (8th Cir. 2003) ("Under Iowa law, contractual disclaimers are ineffective to bar a plaintiff from asserting a claim for fraudulent inducement."); *Envtl. Sys., Inc. v. Rexham Corp.*, 624 So. 2d 1379, 1383 (Ala. 1993) ("[T]he law in this state renders an integration, or merger, clause ineffective to bar parol evidence of fraud in the inducement or procurement of a contract."); *Hall v. Crow*, 34 N.W.2d 195, 198 (Iowa 1948) ("[W]here there is evidence of fraudulent misrepresentations in the inception of a contract such misrepresentations can be the basis for either an action to rescind or for damages, despite the limiting provisions of a contract."); *Miles Excavating, Inc. v. Rutledge*

(continued . . .)

"We continue to believe that parties to contracts, whether experienced in business or not, should deal with each other honestly, and that a party should not be permitted to engage in fraud to induce the contract." *McEvoy Travel Bureau, Inc. v. Norton Co.*, 563 N.E.2d 188, 194 (Mass. 1990). Likewise, the Restatement (Second) of Contracts declares that "[a] term unreasonably exempting a party from the legal consequences of a misrepresentation is unenforceable on grounds of public policy." Restatement (Second) of Contracts § 196 (1981).

[¶23.] South Dakota cases fall squarely within the traditional, majority rule. In *Holmes*, we rejected the argument that a specific contract disclaimer precluded extrinsic evidence of fraud, quoting with approval the following: "Fraud will vitiate any contract, regardless of the fact that the contract contains a provision to the effect that . . . the party who claims the fraud entered into the contract with knowledge of the condition of the subject matter of the contract and agrees to accept the same 'as is.'" 452 N.W.2d at 137 (additional citation and quotations marks

---

(. . . continued)
*Backhoe & Septic Tank Servs., Inc.*, 927 P.2d 517, 518 (Kan. Ct. App. 1996) ("We hold that parol evidence is admissible to show fraud in the inducement of a contract even where the contract contains a provision stating the parties have not relied on any representations other than those contained in the writing."); *Gibb v. Citicorp Mortg., Inc.*, 518 N.W.2d 910, 919 (Neb. 1994) ("Citicorp cannot escape liability for the fraudulent conduct of its agent on the sole basis that it included a disclaimer clause in the purchase agreement."); *Blanchard v. Blanchard*, 839 P.2d 1320, 1322-23 (Nev. 1992) ("[I]ntegration clauses do not bar claims for misrepresentation."); *Van Der Stok v. Van Voorhees*, 866 A.2d 972, 975 (N.H. 2005) ("We have held that neither a standard merger clause . . . nor the parol evidence rule . . . bars an action for fraud.") (citations omitted); *Travers v. Spidell*, 682 A.2d 471, 472-74 (R.I. 1996) (holding that general merger clause does not shield defendant from liability for fraud); *Merten v. Nathan,* 321 N.W.2d 173 (Wis. 1982) (contract exculpatory clauses are not enforceable when the fraud is carried out intentionally or recklessly).

omitted). Again, in *Engels*, we examined a contract disclaimer, much like the one presented here. It provided: "It is agreed and understood by and between the parties hereto that this agreement is based upon the purchaser[']s personal inspection and investigation of the property involved and the ledgers and books of the Sellers and not upon any representations or warranties of the Seller other than set out herein." 2000 S.D. 1, ¶ 7, 604 N.W.2d at 243. We held that the defendant was not allowed to use the disclaimer clause in the "purchase agreement or the contract for deed to shield itself from liability for fraud." *Id.* ¶ 15. That was the state of our law until 2002.

> 2. *Schwaiger v. Mitchell Radiology Assocs., P.C.: A Shift to the Minority Rule*

[¶24.]     Poeppel argues that *Schwaiger* controls the outcome of this appeal. 2002 S.D. 97, 652 N.W.2d 372. In *Schwaiger*, a 2002 split decision, this Court declared for the first time that a claim of fraud in the inducement could be dismissed as a matter of law because the written contract disclaimer was in "direct contradiction" to the alleged oral misrepresentation. *Id.* ¶ 11. While not announcing that it had done so, the *Schwaiger* Court diverged from our longstanding precedent in fraudulent inducement cases to the nontraditional, minority view held by a handful of jurisdictions. No mention was made of South Dakota's rule or of the many cases upholding it, and nothing was offered to explain the abrupt turnabout. Moreover, the out-of-state cases cited are irreconcilable with South Dakota law. For example, the *Schwaiger* Court wrote: "We agree that if a written contract is in direct contradiction of an oral representation, reliance on that oral representation, as a matter of law, is unjustified." *Id.* ¶ 11. For this

proposition, however, the *Schwaiger* Court cited *Davidson v. Wilson*, 973 F.2d 1391, 1401 (8th Cir. 1992). *Davidson* was a Rule 10b-5 federal securities fraud case, and under cases interpreting the Securities Exchange Act, special rules apply to the sale of securities governed by the Act, which include use of an eight-factor test applicable to Rule 10b-5 lawsuits. 973 F.2d at 1400. Based on this out-of-state authority, the *Schwaiger* Court found it unnecessary even to address "whether parol evidence is admissible to prove fraud in the inducement of a contract." 2002 S.D. 97, ¶ 13 n.6, 652 N.W.2d at 378 n.6.

[¶25.] It is one thing to say that a contract's disclaimer and merger clauses may be considered as evidence that a party did not justifiably rely on some earlier misrepresentation; it is quite another to rule as a matter of law that such clauses bar even the opportunity to offer evidence of misrepresentation. Moreover, *Schwaiger's* "direct contradiction" rule cannot be understood as anything other than dictum. This is because the Court went on to hold that "there are no specific facts provided by Schwaiger supporting his claim for fraudulent inducement[,]" and "[t]here are no specific material facts indicating that MRA [Mitchell Radiology Associates] wrongfully induced Schwaiger to enter the initial employment contract with MRA." *Id*. ¶¶ 14, 15. Since there were no facts to establish fraudulent inducement, it was a moot question whether the contract provisions directly contradicted those (nonexistent) facts. Thus, the issue was not properly before the Court, and the *Schwaiger* rule can be relegated to advisory status.

[¶26.] To establish fraud, Lester must prove that Poeppel committed any of the following acts:

> (1) The suggestion as a fact of that which is not true by one who does not believe it to be true; (2) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true; (3) The suppression of that which is true by one having knowledge or belief of the fact; (4) A promise made without any intention of performing it; or (5) Any other act fitted to deceive.

SDCL 53-4-5. If fraud is established, the contract can be rescinded, regardless of whether it is unambiguous.

[¶27.]     Here, Lester alleged that Poeppel falsely represented to him that Lester would receive the company's financial information at the close of the contract (when in fact he never received it), that the stocks Lester sought to purchase would generate approximately $115,000 (when in fact an accounting firm's report in Poeppel's possession concluded the value was 50% less), and that the company had an exclusive franchise arrangement with Coldwell Banker. Accepting the truth of Lester's assertions, Poeppel misrepresented the value of his stock and the status of the franchise arrangement, with a promise that Lester would see the company's financial status at the contract execution, which facts and representations Poeppel used to fraudulently induce Lester to enter into the contract. Poeppel disputes Lester's allegations. Thus, these disputes form genuine issues of material fact on the fraud question and are suitable for a jury.

[¶28.]     Recently, this Court wrote that reliance in a fraudulent inducement case is a question of fact. *See Stern Oil Co., Inc. v. Brown*, 2012 S.D. 56, ¶ 14, 817 N.W.2d 395, 400. Thus, Lester's fraudulent inducement evidence should not have been kept from a jury. Because the trial court barred Lester's fraudulent

inducement evidence under the parol evidence rule, the court erred as matter of law.

## CONCLUSION

[¶29.]    The trial court correctly concluded that the contract was clear and unambiguous as to Lester's receipt of financial documents.  However, even though the contract is unambiguous, Lester should have been allowed to present evidence to a jury that he was fraudulently induced to sign the stock purchase agreement. The trial court erred as a matter of law by barring Lester's fraudulent inducement evidence under the parol evidence rule.  Because of our ruling on this issue, we need not address the other issues raised.  We reverse and remand for trial.

[¶30.]    GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and SEVERSON, Justices, concur.