#27356-a-GAS
**2015 S.D. 93**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

GRANITE BUICK GMC, INC.,
f/k/a MCKIE BUICK GMC, INC.,                    Plaintiff and Appellant,

v.

ADAM RAY and GATEWAY AUTOPLEX, LLC,             Defendants and Appellees,


MCKIE FORD LINCOLN, INC.,                       Plaintiff and Appellant,

v.

SCOTT HANNA and GATEWAY
AUTOPLEX, LLC,                                  Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA
\* \* \* \*

THE HONORABLE JANINE M. KERN
Judge
\* \* \* \*

JOHN K. NOONEY
ROBERT J. GALBRAITH of
Nooney, Solay, & Van Norman, LLP
Rapid City, South Dakota                        Attorneys for plaintiffs and
                                                appellants.


ROGER A. TELLINGHUISEN
MICHAEL V. WHEELER of
DeMersseman, Jensen, Tellinghuisen
  & Huffman, LLP
Rapid City, South Dakota                        Attorneys for defendants and
                                                appellees.

\* \* \* \*

CONSIDERED ON BRIEFS
ON OCTOBER 5, 2015
OPINION FILED **12/09/15**

#27356

SEVERSON, Justice

[¶1.]      Adam Ray, employee of Granite Buick GMC, Inc., and Scott Hanna, employee of McKie Ford Lincoln, Inc., signed non-compete agreements during the course of their employment.  They left their respective employment and started their own automobile dealership, Gateway Autoplex, LLC.  Granite Buick and McKie Ford sought injunctions to enforce the non-compete agreements.  A jury was impaneled to determine Ray's and Hanna's affirmative defenses.  The circuit court treated the jury verdict as binding; on appeal we reversed and remanded for findings of facts and conclusions of law.[1]  On remand, the court found that the non-compete agreements were valid pursuant to SDCL 53-9-11.  However, it found in favor of Ray and Hanna based on affirmative defenses, and therefore it did not grant Granite Buick and McKie Ford the injunctive relief sought.  Granite Buick and McKie Ford appeal.  We affirm.

## Background

[¶2.]      Adam Ray began his employment with Granite Buick in 2005.  At the time, Granite Buick was known as McKie Buick GMC Pontiac, Inc., and it was part of the "McKie Automotive Group" (McKie Group) that included McKie Ford (formerly McKie Ford Lincoln Mercury, Inc.).  Therefore, Ray worked for both Granite Buick and McKie Ford until the McKie Group split in 2012, at which time Ray began to work exclusively for Granite Buick.  In August 2006, during a weekly meeting of sales staff, Troy Claymore, the general sales manager of the McKie Group, presented a covenant not to compete.  Ray was present at this meeting.

---

1.      *See Granite Buick GMC, Inc. v. Ray*, 2014 S.D. 78, 856 N.W.2d 799.

-1-

Claymore told the sales staff that the covenant would only be enforced against sales people that made a "lateral move" to a competitor. Ray testified that Claymore represented that if employees "bettered themselves" then the agreement would not be enforced. Other individuals present at the meeting and testifying at trial corroborated Ray's testimony about the representations made by Claymore. Further, Claymore also testified that he did not intend to stop anyone from "bettering themselves" but that in his experience in the industry, dealerships do not typically call salesmen and offer them a management position. Although the covenant was voluntary, there were adverse employment consequences, such as reduced commissions, if a salesperson did not agree to the covenant. Ray was concerned about the covenant and did not sign immediately. Ray's direct supervisor, Darin Rittenour, testified that he pressured Ray to sign the agreement and reassured Ray that Claymore was "a man of his word." On August 14, 2006, Ray signed the covenant not to compete.[2]

[¶3.] McKie Ford hired Scott Hanna as a sales manager in June 2009. He signed a non-competition and disclosure agreement that same month.[3] By the

---

2. It provided, in part:

On termination of my employment, for any cause whatsoever, I will not directly or indirectly engage in the same or similar competitive line of business, carried on by your Company, during the duration of my employment, or engage to work for any individual, firm or corporation engaged in the same business in your market areas for a period of one year subsequent to such termination, such period not to include any period of violation or period of time required for litigation to enforce the covenants.

3. It stated, in relevant part:

On termination of my employment for any cause whatsoever, I will not engage to work for any individual, firm, or entity engaged in the same or

(continued . . .)

summer of 2012, Ray and Hanna were exploring the possibility of opening their own car dealership. A meeting with Daniel Porter in January 2013 led to the creation of Gateway Autoplex, LLC. Articles of organization for Gateway Autoplex were filed on February 8, 2013. They were signed by Porter on January 29, 2013, and by Ray and Hanna on February 1, 2013. The same day they signed the articles, Ray and Hanna personally guaranteed a lease agreement between Gateway Autoplex and Forkner Limited Partnership II. They also informed their employers that they would be terminating their employment.

[¶4.]    Hanna met with McKie Ford's sole shareholder at the time, Mark McKie, specifically informing Mark that he was leaving to open a new dealership. Hanna was concerned that Mark would prevent him from opening his own dealership and that it would ruin the relationship between their families. Hanna asked Mark whether Mark would come after him in "any way whatsoever" or whether his departure would affect the relationship between the families. Mark responded "Shit, no, Scotty, that will never be the case. . . . This is the car business. . . . I wish you the best of luck." Mark testified that at the time of their conversation, he did not know that Hanna had signed a covenant not to compete, and he could not recall whether he made these statements to Hanna or not. Mark testified that it was a week after this conversation when he learned of Hanna's

———————————————————

(. . . continued)
 similar business or be a principal, member, or owner of any entity who is engaged in the same or similar line of business within 200 miles of the city limits of Rapid City for a period of one year subsequent to such termination, such period not to include any period of violation or period of time required for litigation to enforce the covenants.

covenant not to compete. However, Mark did not inform Hanna of intentions to enforce the covenant. It was about a month and a half later when Hanna learned of the decision to enforce.

[¶5.] Also on February 1, 2013, Ray informed Ross McKie, at the time the sole shareholder for Granite Buick, of his resignation and intent to open and operate Gateway Autoplex. Ray met with Claymore as well that day to discuss Ray's departure. Claymore asked that Ray stay for two weeks in order to train a replacement. Ray agreed and his last day of employment was February 15. No one informed Ray that Granite Buick intended to enforce the covenant until the last day of Ray's employment. On that day, Ross gave Ray a letter from Granite Buick's attorney. The letter was dated February 7, 2013, and it informed Ray of Granite Buick's intention to enforce the covenant not to compete.

[¶6.] Based on these events, when Granite Buick and McKie Ford sued Ray and Hanna, the former employees asserted a number of affirmative defenses to enforcement of the covenants not to compete. Ray asserted fraudulent inducement, equitable estoppel, promissory estoppel, and waiver. The court found that Ray had met his burden to establish fraudulent inducement, equitable estoppel, and promissory estoppel, but not waiver. Hanna asserted equitable estoppel, promissory estoppel, and waiver. The court found in favor of Hanna on each of these affirmative defenses. Granite Buick and McKie Ford now appeal alleging that the circuit court erred by: (1) considering parol evidence on Ray's defenses of equitable estoppel and promissory estoppel; (2) determining that Ray established the affirmative defenses of fraudulent inducement, equitable estoppel, and

promissory estoppel; and (3) determining that Hanna established the affirmative defenses of waiver, equitable estoppel, and promissory estoppel.

## Analysis

*Whether Ray established an affirmative defense.*

[¶7.] Granite Buick asserts that the circuit court improperly considered parol evidence, the conversation between Claymore and Ray prior to Ray entering into the contract, to make its determination that Ray had established equitable estoppel and promissory estoppel. However, the parties agree that "parol or extrinsic evidence is admissible to prove fraud." *Poeppel v. Lester,* 2013 S.D. 17, ¶ 20, 827 N.W.2d 580, 585. "No matter how clear and unambiguous a contract might be, parol evidence may be offered to show that the contract is invalid because of fraud in its inducement." *Id.* ¶ 21. Therefore, we first address whether Ray met his burden to establish fraudulent inducement, thereby rendering consideration of the other affirmative defenses, and the evidence relied on to establish those, unnecessary.

[¶8.] South Dakota law provides that "apparent consent [to a contract] is not real or free and is voidable when obtained through: . . . (2) Fraud[.]" SDCL 53-4-1(2). The acts constituting actual fraud in relation to contracts are defined in SDCL 53-4-5. It provides:

> Actual fraud in relation to contracts consists of any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract:
>
>> (1) The suggestion as a fact of that which is not true by one who does not believe it to be true;

    (2) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true;

    (3) The suppression of that which is true by one having knowledge or belief of the fact;

    (4) A promise made without any intention of performing it; or

    (5) Any other act fitted to deceive.

Actual fraud is always a question of fact.

SDCL 53-4-5. Granite Buick asserts that there are no facts to support the circuit court's determination that Ray demonstrated fraudulent inducement. According to Granite Buick, Ray did not "better" himself by terminating his employment to manage Gateway Autoplex (Ray went from earning a $170,000 yearly salary to $5,000 per month) and there is no evidence that Granite Buick changed its position that it would not enforce the covenant for employees who were actually "bettering" themselves. Granite Buick maintains that because there was no change in its position, there cannot be a misrepresentation which would constitute fraudulent inducement. Ray responds that the letter he received from Granite Buick's attorney, dated February 7, 2013 (a week before he left his employment), demonstrated that whether Ray "bettered" himself or not was irrelevant to Granite Buick.

[¶9.] Based in part on this letter, the circuit court found that whether Ray was making a lateral move or not was irrelevant to Granite in deciding whether to enforce the covenant not to compete. Further, it found that Ray and Hanna were to operate and carry on as co-owners of Gateway Autoplex with Daniel Porter and to share equally in profits; Ray and Hanna undertook "personal financial responsibilities and risks most generally associated with the ownership of a

business rather than simply as an employee working as a manager." Therefore, the court found that Ray's move to Gateway Autoplex "constitute[d] a move to better himself."

[¶10.] The circuit court's findings of fact will not be set aside unless they are clearly erroneous. SDCL 15-6-52(a). After a review of the record, we are not left "with a definite and firm conviction that a mistake has been made." *See Miller v. Jacobsen*, 2006 S.D. 33, ¶ 19, 714 N.W.2d 69, 76. Fraud "may be proved otherwise than by direct and positive evidence. Like other issues of fact it may be established by inference arising from all the other facts and circumstances in evidence." *Funke v. Holland Furnace Co.*, 78 S.D. 374, 378, 102 N.W.2d 668, 670 (S.D. 1960). Based on Granite Buick's actions, the court properly concluded that Granite Buick never intended to perform the promise—that the covenant would only be enforced if an employee made a lateral move—made by Claymore. *See* SDCL 53-4-5(4). Because the court did not err in finding that Ray was fraudulently induced into entering the contract, Ray had a valid affirmative defense to enforcement of the contract. He did not need to establish additional defenses, and we need not address Granite Buick's remaining argument that the circuit court improperly used parol evidence to determine that Ray had met his burden of proving equitable estoppel and promissory estoppel.

*Whether Hanna established an affirmative defense*

[¶11.] McKie Ford contends that Hanna did not establish the affirmative defenses that he alleged. The court found that he met his burden for each defense raised. We first address Hanna's affirmative defense of waiver. "Waiver is a

volitional relinquishment, by act or word, of a known, existing right conferred in law or contract." *Auto-Owners Ins. v. Hansen Hous., Inc.*, 2000 S.D. 13, ¶ 30, 604 N.W.2d 504, 512 (quoting *Harms v. Northland Ford Dealers*, 1999 S.D. 143, ¶ 17, 602 N.W.2d 58, 62). "A waiver exists where one in possession of any right, whether conferred by law or by contract, and of full knowledge of the material facts, does or forbears the doing of something inconsistent with the existence of the right or of his or her intention to rely upon it." *Wehrkamp v. Wehrkamp*, 2009 S.D. 84, ¶ 8, 773 N.W.2d 212, 215 (quoting *W. Cas. & Sur. Co. v. Am. Nat'l Fire Ins.*, 318 N.W.2d 126, 128 (S.D. 1982)). McKie Ford claims that none of the elements of waiver were met because Hanna and Mark McKie never specifically referenced the covenant not to compete in their conversation on February 1, 2013, neither knew that it existed, and Mark was without full knowledge of the material facts. Hanna testified that he told Mark his plans to begin Gateway Autoplex, and that in response to the question as to whether Mark would come after him in "any way," Mark responded in the negative. McKie Ford maintains that this conversation is irrelevant in light of Mark's testimony that he was unaware that Hanna signed a covenant not to compete.

[¶12.]     The circuit court found that when Mark responded to Hanna's inquiry as to whether Mark would come after Hanna, Mark "was clearly, decisively, and unequivocally referring to the enforcement of the non-competition agreement in that Hanna had fully informed him of his intention to open a competing dealership." It also found that Mark "had full knowledge of the material facts. He relinquished his right to enforce the covenant, and that Hanna relied upon those statements."

Again, we are not firmly convinced that a mistake has been made. *See Miller*, 2006 S.D. 33, ¶ 19, 714 N.W.2d at 76. Mark was the sole shareholder of McKie Ford at the time. Previously, he was one of three owners of the McKie Group. The non-compete agreements had been used since 2006 and enforced in the past. Lastly, Hanna testified at trial that Mark "knew what I meant." The court properly made a witness credibility determination and chose to find facts contrary to Mark's testimony. "[A]n appellant cannot show clear error based upon his 'own testimony and version of the events and not the testimony of the appellee accepted by the [circuit] court in entering its findings. Such a biased view of the record will not support a determination of clear error in a [circuit] court's findings.'" *Donat v. Johnson*, 2015 S.D. 16, ¶ 18, 862 N.W.2d 122, 129. Although McKie Ford seems to argue that the non-compete needed to be specifically referenced in the conversation, it cites no authority for such a proposition. The court did not clearly err in its findings. The establishment of the one defense by Hanna is sufficient to uphold the court's decision to deny the injunctive relief sought by McKie Ford. As a result, we do not address whether Hanna established the other affirmative defenses that the circuit court found to exist.

## Conclusion

[¶13.] The circuit court properly determined that Ray's covenant not to compete had been fraudulently induced. It also properly determined that McKie Ford waived its right to enforce Hanna's covenant not to compete. Therefore, we affirm the court's decision to deny Appellants the injunctive relief sought and do not address Appellants' remaining arguments.

#27356

[¶14.]     GILBERTSON, Chief Justice, and ZINTER and WILBUR, Justices, and HOUWMAN, Circuit Court Judge, concur.

[¶15.]     HOUWMAN, Circuit Court Judge, sitting for KERN, Justice, disqualified.